**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2011

No. 10-20046

Lyle W. Cayce
Clerk

U.S. BANK, NATIONAL ASSOCIATION,

> Plaintiff–Appellee–Cross Appellant

v.

MITCHELL KOBERNICK; ALLAN KLEIN; KENSINGTON GREEN (MK)
INCORPORATED; KENSINGTON GREEN (AK) INCORPORATED,

> Defendants–Appellants–Cross Appellees

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-1458

Before BENAVIDES and PRADO, Circuit Judges, and ALVAREZ,[*] District
Judge.

PER CURIAM:[**]

The district court granted Plaintiff's motion for summary judgment in
part, enforcing a loan guaranty against Defendants but denying default interest.
Both parties appealed, and we affirm.

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-20046

## I. BACKGROUND

### A.    Factual Background

Defendants Mitchell Kobernick and Allan Klein were the sole shareholders of, respectively, Defendants Kensington Green (MK) Incorporated ("KGMK") and Kensington Green (AK) Incorporated ("KGAK").   KGMK and KGAK were the general partners of Kensington Club Apartments, Ltd. ("KCA").   KCA owned Kensington Club I Apartments ("KCI"), an apartment complex in Houston, Texas.   KCA executed a promissory note ("Note") for $7,150,000, payable to Holliday Fenoglio, LP.  For reasons immaterial to this appeal, Holliday Fenoglio, LP's rights were assigned several times prior to their final assignment to Plaintiff U.S. Bank, National Association ("Bank").[1]  As security for the Note, KCA executed a Deed of Trust and Security Agreement ("Security Instrument"), pledging KCI as collateral.

Under the Note's terms, KCA had a non-recourse obligation unless certain enumerated events occurred, at which point KCA and its general partners, KGMK and KGAK, would become liable for the debt secured by the Note.  As relevant to this appeal, Paragraph 14(c) of the Note stated that:

> [T]he agreement of Lender not to pursue recourse liability as set forth . . . above SHALL BECOME NULL AND VOID and shall be of no further force and effect in the event of Borrower's default under Sections 4.2 or 8.2 of the Security Instrument, or if the Property or any part thereof shall become an asset in (i) a voluntary bankruptcy or insolvency proceeding, or (ii) an involuntary bankruptcy or insolvency proceeding (A) which is commenced by any party controlling, controlled by or under common control with Borrower (the "Borrowing Group") or (B) in which any member of the Borrowing Group objects to a motion by Lender for relief from any stay or injunction from the foreclosure of this Security Instrument

---

[1] For simplicity's sake, each of the Bank's predecessors-in-interest will be referred to throughout as "the Bank."

2

No. 10-20046

or any other remedial action permitted hereunder or under the Note or the other Loan Documents.

Section 8.2 of the Security Instrument stated that:

Borrower agrees that the sale, conveyance, mortgage, grant, bargain, encumbrance, pledge, assignment, or other transfer of the Property, or any part thereof, without the prior written consent of Lender, shall constitute an event allowing Lender to declare the entire unpaid Debt to be immediately due and payable without notice of intention to accelerate, notice of acceleration, demand or any other notice.

Kobernick and Klein executed a Guaranty of Recourse Obligation of Borrower ("Guaranty"), which guaranteed KCA's performance in the event of a default under Section 8.2 of the Security Instrument.

In December 2003, KCA conveyed KCI to Comunidad Kensington Club I, LLC ("Comunidad"), a Texas non-profit corporation. Kobernick was one of three managers of Comunidad. KCI had to be transferred to Comunidad by December 31, 2003, to be eligible for a tax exemption from real estate taxes for Community Housing Development Organizations like Comunidad. Because of the time restraint, Kobernick did not get the written consent of the Bank prior to the transfer, as required by Section 8.2 of the Security Instrument.

In March 2004, Kobernick wrote to the Bank to explain the transaction. In August 2004, Kobernick again wrote to the Bank, explaining that KCI was not generating enough cash to service the Note and maintain the property, but by transferring KCI to Comunidad before December 31, 2003, KCI would no longer have to pay real estate taxes. Additionally, Kobernick requested that the Bank reevaluate the necessity of a tax escrow account for KCI because KCI would no longer owe real estate taxes, and requested that the Bank return those funds. The Bank complied with the request, returning the amount held in escrow in 2004, 2005, and 2006 to Comunidad, and did not require tax escrow

3

payments in 2007. Kobernick included in his August 2004 letter a legal opinion letter from his lawyer which argued that there had been no change in the property's management or the involvement of the principals, that "control of the property and the revenue associated with such property was retained by the seller," and that therefore the existing borrowers could be "characterized as the current and continuing owners of the property."

On October 2, 2004, Kobernick wrote to the Bank a third time. In this letter, Kobernick again referenced the legal opinion letter, and summarized its reasoning as to why the transfer of KCI from KCA to Comunidad should not be considered a change in ownership. Kobernick emphasized that he was "personally one of the three managers of [Comunidad], and [was] a key principal of the borrower," and that Comunidad regulations "allow[ed him] to block any sale by [Comunidad], or bankruptcy filing, making the entity bankruptcy remote." Kobernick admitted, however, that he "underst[ood] that a strict interpretation of the loan documents could allow [the Bank] to treat this proposed transaction as a sale and/or transfer of ownership," but he "request[ed] that [the Bank] view the transaction more broadly." On October 4, 2004, the Bank acknowledged that it had received KCA's request to approve the transfer, but noted that its acknowledgment was not consent.

In January 2008, the Bank sent a Notice of Default, Acceleration and Revocation of License to Receive and Collect Rents notifying KCA, and Kobernick, Klein, KGMK, and KGAK (collectively, "Defendants") that the Note was in default and that all amounts due on the Note and Security Instrument were immediately due and payable. This notice stated that default was due to KCA's conveyance of KCI to Comunidad without prior written approval. A foreclosure sale of the property was noticed for April 1, 2008.

No. 10-20046

One day before the foreclosure sale, on March 31, 2008, Comunidad filed a voluntary petition under Chapter Eleven of the Bankruptcy Code. This petition was signed by Kobernick in his capacity as a manager of Comunidad.

## B.    Procedural Background

In April 2008, the Bank filed this lawsuit in Texas state court, arguing that Defendants' default triggered recourse liability under the Note's terms, and seeking to recover from Defendants the principal indebtedness on the Note, accrued and unpaid interest, late fees, default interest, attorney's fees, costs of collection and any other amounts due and payable under the Note, Security Instrument, and Guaranty. Defendants removed to federal court, arguing that the case fell within 28 U.S.C. § 1334(b)'s grant of jurisdiction to United States District Courts for civil actions "arising under Title 11, or arising in or related to cases under Title 11." In June 2008, the Bank filed a separate, involuntary petition of bankruptcy against KCA under Chapter Eleven of the Bankruptcy Code, and KCA was later dismissed from this case upon the Bank's unopposed motion. In October 2008, the Bank filed an amended complaint asserting another basis for federal jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332, because Defendants were all citizens of Texas and the Bank was a citizen of South Dakota.[2]

In September 2008 the Bank moved for summary judgment, which it supplemented in October 2008 and February 2009. In its motions for summary judgment, the Bank urged two arguments relevant to this appeal: first, Comunidad's voluntary bankruptcy made KCI an asset in a bankruptcy proceeding commenced by a member of the Borrowing Group in violation of

---

[2] Capital Markets, LLC brought this suit on behalf of Wells Fargo Bank Minnesota, N.A., Trustee for the Registered Holders of First Union-Lehman Brothers-Bank of America Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 1998-C2, who at the time of the lawsuit was the assignee of the Note, Security Instrument, and Guaranty.

No. 10-20046

Paragraph 14(c) of the Note; and second, Defendants violated Section 8.2 of the Security Instrument by transferring KCI to Comunidad without the Bank's prior written consent. Defendants argued in response to the Bank's first argument that Kobernick was not a member of the "Borrowing Group," nor did he "commence" Comunidad's voluntary bankruptcy. With respect to the Bank's second argument, Defendants argued that the Bank had waived its right to declare a default based on the sale of KCI to Comunidad without written consent by refunding Defendants' monthly tax escrow payments.

The district court granted the Bank's motion in May 2009, determining that Kobernick was a member of the "Borrowing Group," that he commenced Comunidad's voluntary bankruptcy, and that therefore recourse liability was triggered. The district court rejected the Bank's second argument, agreeing with Defendants that the Bank had waived its right to declare a default based on the transfer of KCI because it had refunded the escrow money for four years following the property transfer.

In June 2009, the Bank moved for an entry of final judgment and attorney's fees. After a hearing, the district court granted in part the Bank's motion for attorney's fees in August 2009. Pursuant to that order, the district court awarded the Bank $126,460.97 in fees incurred in litigating this matter. Defendants moved for a new trial, reiterating their argument that the Comunidad bankruptcy was not "commenced" by a member of the "Borrowing Group." The district court denied this motion in December 2009. In March 2010, the district court granted the Bank $343,080.31 in attorney's fees incurred while litigating the related voluntary (Comunidad) and involuntary (KCA) bankruptcies. An amended final judgment was entered in September 2010. Later in September, Defendants filed a motion to alter the judgment, arguing that public policy should have prevented the district court from enforcing what Defendants call the "springing guaranty" provisions in Paragraph 14(c) of the

Note.  In October 2010, Defendants filed a supplemental motion to amend the judgment, arguing that the district court should have waited to enter attorney's fees until a separate, state-court action determined the value of KCI, which the Bank had foreclosed upon.  Defendants argued that the amount of attorney's fees awarded should take into account the total value of the award on the Note, and the award on the Note should be offset by the value of KCI as determined in the state-court action.  The district court denied this motion on November 15, 2010.

## II.  DISCUSSION

Defendants raise two issues on appeal: whether the district court erred in determining that Defendants have recourse liability due to Kobernick's commencement of the Comunidad bankruptcy, and whether we should remand for reconsideration the district court's allegedly premature grant of attorney's fees.  The Bank cross-appeals, raising a single issue: whether the district court erred in determining that because the Bank waived its right to claim a default due to KCA's transfer of KCI to Comunidad without its written consent, it had also waived its right to default interest.

## A.     Standard of Review and Applicable Law

We review a district court's grant of summary judgment de novo, applying the same standards as the district court.  *Kujanek v. Hous. Poly Bag I, Ltd.*, 658 F.3d 483, 487 (5th Cir. 2011).  "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Barker v. Halliburton Co.*, 645 F.3d 297, 299 (5th Cir. 2011) (citation and internal quotation marks omitted).

Under Texas contract law, which governs this dispute, "[i]f the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the

contract as a matter of law." *Enter. Leasing Co. of Hous. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004).

**B.    Recourse Liability**

*1.    Public Policy*

Defendants' overarching argument against recourse liability is that the so-called springing recourse provisions in Paragraph 14(c) of the Note, which trigger recourse liability upon KCI's becoming an asset in a bankruptcy or insolvency proceeding, are unenforceable because they conflict with the public policy prohibition on penalties stemming from the filing of a bankruptcy petition. Defendants rely principally on *In re Huang*, 275 F.3d 1173 (9th Cir. 2002), which held that "[i]t is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code." *Id.* at 1177.[3] *Huang* is distinguishable, however, because here Defendants did not waive their right to file a bankruptcy petition. This case is instead analogous to *FDIC v. Prince George Corp.*, 58 F.3d 1041 (4th Cir. 1995), where the Fourth Circuit enforced the "clear terms" of a promissory note which stated that the debtor was "not entitled to escape liability for a deficiency judgment if it 'voluntarily' becomes part of a case, action, suit or proceeding which suspends, reduces or impairs FDIC's rights of recourse to the property." *Id.* at 1046. Rejecting the debtor's public policy challenge, the *Prince George* court reasoned that "the note did not prohibit [the debtor] from resorting to bankruptcy; it merely provided that if [the debtor] took certain actions it would forfeit its exemption from liability for any deficiency." *Id.* That reasoning applies with equal force here: the Note did not prohibit KCI from becoming an

---

[3] Defendants also cite *ING Real Estate Finance (USA) LLC v. Park Avenue Hotel Acquisition LLC*, 907 N.Y.S.2d 437 (N.Y. Sup. Ct. N.Y. Cty. 2010) (unreported table decision), arguing that it invalidated a springing guaranty triggered by a bankruptcy filing. To the contrary, however, that case held that "immediate liability for the entire debt" was an unenforceable *liquidated damages* provision, not that it was unenforceable because it was triggered by the filing of a bankruptcy petition. *Id.* at *5.

asset in a bankruptcy proceeding; it merely stated that if that event occurred, the loan would convert to a fully recourse loan. Accordingly, we decline to hold that springing guaranty provisions triggered by the filing of a bankruptcy petition are against public policy.

**2.    *Comunidad Bankruptcy***

Defendants argue that under Paragraph 14(c) of the Note, recourse liability is triggered only if two conditions occur: first, that Kobernick was a member of a Borrowing Group; and second, that Kobernick "commenced" the Comunidad bankruptcy. Defendants further argue that the district court erred in determining that each condition was met. The Bank disputes, initially, whether those conditions apply to voluntary bankruptcies—as opposed to involuntary bankruptcies—under the terms of the Note. Moreover, the Bank argues, even if the conditions applied the district court correctly found that they had been met.

The Bank's interpretation of the Note as set forth in its motion for summary judgment is different than the interpretation it urges on appeal, and the district court's order granting the Bank summary judgment analyzed Paragraph 14(c) as if the conditions applied. However, we review the district court's interpretation de novo, *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 216 (5th Cir. 2009), and we may affirm for any reason supported by the record, *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009). The parties' disagreement about whether the conditions apply is easily resolved in the Bank's favor. The conditions following "(A)" in Paragraph 14(c) of the Note unambiguously apply only to an involuntary bankruptcy proceeding. Unless some difference in treatment was intended, there would have been no reason to separate voluntary from involuntary bankruptcies into subsections "(i)" and "(ii)"; the Note could have stated that the debt owed would become recourse debt "if the Property or any part thereof shall become an asset *in a voluntary or*

*involuntary bankruptcy or insolvency proceeding* (A) which is commenced by any member of the Borrowing Group." Moreover, if no difference in treatment was intended between a voluntary and an involuntary bankruptcy, those modifiers could have been left out altogether—"in a bankruptcy or insolvency proceeding" would have been all that was necessary. We therefore affirm the district court's order granting the Bank summary judgment on the ground that under Paragraph 14(c) of the Note, recourse liability was triggered when KCI became an asset in the Comunidad voluntary bankruptcy.

## C.     Attorney's Fees

The district court's amended final judgment awarded the Bank $7,509,771.30, including $503,624.89 in attorney's fees. Defendants argued below that the award was premature because the fair market value of KCI, which an affiliate of the Bank bought at a foreclosure sale for $500,000, had not yet been determined. While this appeal was pending, Kobernick and Klein brought an action in Texas state court to place a fair market value on KCI; the jury in that case has since returned a verdict for $8,015,000. *Kobernick v. Wells Fargo Bank, N.A.*, No. 2010-17974 (269th Dist. Ct., Harris County, Tex. May 27, 2011). Relying on that state court verdict, which is subject to appeal, Defendants urge us to remand this case so the district court can reconsider its attorney's fees award.

Defendants first argue that the Bank is not entitled to any attorney's fees because the fair market value of KCI was greater than the principal, interest and all other charges owed on the Note as of the foreclosure date. Defendants rely on *Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650 (Tex. 2009), which they read as holding that no amount of attorney's fees can be awarded to a party that is not a "prevailing party," even under the terms of a contract provision for attorney's fees. The contract provision at issue in *KB Home Lone Star*, however, is distinguishable from the provisions at issue

in this case. In *KB Home Lone Star*, the contract stated that if either party brought an action to enforce the contract, "the *prevailing party* in any such action, on trial or appeal, shall be entitled to his reasonable attorney's fees to be paid by the losing party as fixed by the court." *Id.* at 652 (emphasis added). Here, however, the Note and Security Instrument state that the Bank is entitled to attorney's fees incurred in collecting the debt without limitation.

Defendants next argue that because the district court's judgment should be reduced by the fair market value of KCI and one of the factors in determining reasonable attorney's fees is "the amount involved and the results obtained," *see Arthur Andersen & Co. v. Perry*, 945 S.W.2d 812, 818 (Tex. 1997), we should remand for the district court to reconsider its award of attorney's fees in light of the lesser result obtained. The Security Instrument, however, stated that the "debt" secured by KCI included any and all fees incurred by the Bank in its efforts to collect the debt, and the Guaranty stated that the term "debt" includes all "sums other than principal or interest which may or shall become due and payable pursuant to the provisions of the Note, the Security Instrument, or the other Loan Documents." The attorney's fees awarded by the district court are therefore part of the debt owed by Defendants pursuant to the Note, Security Instrument, and Guaranty. While Defendants may be entitled to reduce the judgment against them by the fair market value of KCI, such a reduction has no bearing on the amount of attorney's fees awarded by the district court. Accordingly, we decline to remand for the district court to reconsider its attorney's fees award.

### D.    The Bank's Cross-Appeal: Default Interest

The district court determined that under the unambiguous terms of the Note and Section 8.2 of the Security Instrument, KCA's transfer of KCI to Comunidad without the Bank's written consent constituted a default; however, the Bank waived its right to declare a default under these provisions by

No. 10-20046

refunding KCA's tax escrow money for four years after receiving notice of the transfer. The Bank argues that the district court erred in finding waiver because the transfer was a self-executing default event triggering full recourse liability, and no later action could un-trigger recourse liability. In support, the Bank cites two state trial-level cases holding that a debtor cannot avoid recourse liability by curing a default which had triggered recourse liability. *See CSFB 2001-CP-4 Princeton Park Corp. Ctr., LLC v. SB Rental I, LLC*, 980 A.2d 1, 6–7 (N.J. App. Div. 2009); *First Nationwide Bank v. Brookhaven Realty Assocs.*, 637 N.Y.S.2d 418, 421 (2d Dep't 1996). The Bank further argues that the Security Instrument contains a non-waiver clause which states that "[t]he failure of Lender to insist upon strict performance of any term thereof shall not be deemed a waiver of any term of this security Instrument."

"Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* Each element of waiver is present here: the Bank had the right to declare a default if KCI was transferred without its written consent; it knew it had that right; and its intentional conduct in withholding written consent, but refunding tax escrow payments as if it had approved the conveyance to the tax-exempt Comunidad for four years before declaring a default, was inconsistent with its right to declare a default. *See Straus v. Kirby Court Corp.*, 909 S.W.2d 105, 108 (Tex. App.— Houston [14th Dist.] 1995, writ denied) ("[A] nonwaiver clause may, in some circumstances, be waived."). The cases cited by the Bank are inapposite because they stand for the proposition that a default triggering a springing guaranty provision cannot be cured, which is not at issue. Accordingly, the district court

12

did not err in determining that the Bank waived its right to declare a default based on the transfer of KCI, and for the same reasons did not err in determining that the Bank is not entitled to default interest dating from the time of the transfer.

## III.  CONCLUSION

For the foregoing reasons, the district court's order granting summary judgment is AFFIRMED.