**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 30, 2012

Lyle W. Cayce
Clerk

No. 12-10143
Summary Calendar

PETE THOMAS; LESA THOMAS,

Plaintiffs-Appellants,

versus

EMC MORTGAGE CORPORATION;
BANK OF NEW YORK MELLON CORPORATION,
Formerly Known as Bank of New York
as Successor Trustee to J.P. Morgan Chase Bank, as Trustee for
Certificate Holders of Bear Stearns Asset Backed Securities, Incorporated
Asset Backed Certificates Series 2003-2,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
No. 4:10-CV-861

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10143

Pete and Lesa Thomas appeal a summary judgment on their claims against EMC Mortgage Corporation[1] and the Bank of New York Mellon Corporation (the "banks") for breach of contract and anticipatory breach of contract, unreasonable collection, negligent misrepresentation, and violation of the Texas Debt Collection Practices Act ("TDCPA").  The Thomases also appeal the denial of their request for an accounting, declaratory judgment, and injunctive relief. Finding no error, we affirm.


I.

In March 1996, the Thomases executed a deed of trust, promissory note, and Loan Agreement Rider with the banks in connection with their purchase of a house.  After falling behind on their payments in the fall of 2006, they negotiated multiple repayment plans over the following four years.[2]  The parties never agreed to a permanent modification of the loan.

After receiving a notice of foreclosure sale, the Thomases sued in state court in 2010, alleging a variety of claims arising from the protracted loan-modification negotiations and the banks' efforts to foreclose.[3]  The banks removed to federal court and moved for summary judgment.  The district court entered a Memorandum Opinion dismissing all of the breach-of-contract claims except an alleged violation of the federal Real Estate Settlement Procedures Act ("RESPA").  The court also dismissed claims asserting unreasonable collection efforts, negligent misrepresentation, and gross negligence.[4]  Claims raised under

---

[1] EMC Mortgage Corporation is now known as EMC Mortgage LLC.

[2] EMC Mortgage Corporation began servicing the promissory note in 2003; the mortgage loan was assigned to the Bank of New York Mellon Corporation in 2009.

[3] To date, no foreclosure has occurred.

[4] The court also dismissed a claim raised under the Texas Deceptive Practices Trade

(continued...)

2

No. 12-10143

RESPA and the TDCPA, along with the Thomases' request for declaratory and injunctive relief, initially survived summary judgment, but the banks moved for reconsideration, which the district court granted after a pre-trial conference.

## II.

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012), *petition for cert. filed*, 81 U.S.L.W. 3231 (Aug. 29, 2012) (No. 12-271). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). The movant has the burden of showing that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). We view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

The Thomases contend that the district court erred when it granted summary judgment on their breach-of-contract cause of action. Though abandoning their RESPA claim,[5] the Thomases appeal dismissal of their claims alleging anticipatory breach of contract, erroneous appointment of a substitute trustee,

---

[4] (...continued)
Act that was expressly abandoned by the Thomases before the Memorandum Opinion was issued.

[5] At the pre-trial conference, counsel for the Thomases conceded that there was no summary-judgment evidence of a qualified written request for an accounting within the meaning of RESPA.

waiver, breach of a unilateral contract, and breach of the duty of good faith and fair dealing.

The Thomases allege that the court erred by dismissing the anticipatory-breach-of-contract claim because the banks did not address it in their motion for summary judgment.  The Thomases rely on *John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987), in which we reversed a summary judgment because the plaintiff did not have an opportunity to respond to a ground for dismissal raised *sua sponte* by the district court.  That case, however, is distinguishable:  The banks' motion for summary judgment explicitly referenced the "Breach of Contract and Anticipatory Breach of Contract" section of the Thomases' petition and the factual basis for the anticipatory-breach claim.  Even assuming *arguendo* that the summary judgment on that issue could be properly characterized as *sua sponte*, we decline to reverse, because the Thomases "w[ere] on notice that [they] had to come forward with all [their] evidence." *Celotex*, 477 U.S. at 326.

*Celotex* also controls our disposition of the Thomases' claim regarding EMC's alleged appointment of a substitute trustee.  Although the Thomases present no summary-judgment evidence that EMC appointed a substitute trustee, they contend that the claim survives, because the banks "did not present any evidence that EMC did not appoint the substitute trustee."  This argument misapprehends the applicable summary-judgment standard.  Because the Thomases rely solely on conclusional pleadings and have not designated any specific facts showing that there is a genuine issue for trial, their claim regarding the appointment of a substitute trustee was properly dismissed.  *Id.* at 324.

Regarding the remaining breach-of-contract claims, it is undisputed that the Thomases failed to make timely payments.  Under well-established principles of Texas contract law, that material breach would normally prevent them from maintaining a breach-of-contract claim.  *See Dobbins v. Redden*, 785 S.W.2d

No. 12-10143

377, 378 (Tex. 1990). Though the Thomases allege that the banks waived their right to act on the Thomases' breach by accepting payments following default, the district court correctly determined that there was no waiver. Both the promissory note and the repayment plan contain "no-waiver" provisions. Moreover, the Thomases adduced no summary-judgment evidence that the banks had manifested an "actual intent to relinquish [their] rights" under the contract, an essential element of waiver under Texas law.[6]

There was no breach of a unilateral contract, because no such contract was formed. The Thomases ground their claim in oral promises, regarding loan modification, allegedly made by the banks. Similar to the Loan Repayment Agreements executed in 2009 and 2010, the Loan Agreement Rider executed by them in 1996 provides, however, that the "written loan agreements . . . may not be contradicted by evidence of . . . subsequent oral agreement on the parties."[7]

We also agree with the district court that the banks could not have not breached a duty of good faith and fair dealing. Under Texas law, there is no such duty absent a special relationship, *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990), which does not generally exist between a mortgagor and mortgagee, *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302 (Tex. App.—Amarillo 1988, writ denied). As the district court noted, the Thomases have alleged no facts . . . that would remove their relationship with [Appellees] from ordinary consideration." *Thomas,* 2011 WL 5880988, at *7.

## IV.

The district court also correctly granted summary judgment on the Thom-

---

[6] *See G.H. Bass & Co. v. Dalsan Props.–Abilene*, 885 S.W.2d 572, 577 (Tex. App.—Dallas 1994, no writ).

[7] *Thomas v. EMC Mortg. Corp.*, No. 4:10-CV-861-A, 2011 WL 5880988, at *2 (N.D. Tex. Nov. 23, 2011).

ases' unreasonable-collection and negligent-misrepresentation/gross-negligence claims. Under Texas law, unreasonable collection is a common-law tort with undefined elements.[8] The district court relied on *Montgomery Ward & Co. v. Brewer*, 416 S.W.2d 837, 844–45 (Tex. Civ. App.—Waco 1967, writ ref'd n.r.e.), which provides that unreasonable collection requires "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." The Thomases urge an "ordinary care" standard, relying on *Employee Finance Co. v. Lathram*,[9] but the *Lathram* standard "has largely been disavowed by Texas courts."[10] Conversely, it is not error for a district court to use the standard for unreasonable collection set forth in *Montgomery Ward.*[11]

Furthermore, a recent survey of Texas decisions indicates that the tort of unreasonable collection "is intended to deter 'outrageous collection techniques,'" particularly those involving harassment or physical intimidation.[12] In *Hidden Forest*, the court overturned a verdict because it found that a refusal to accept payments and settlement offers did not constitute unreasonable collection practices. *Id.* The conduct at issue here is similar: The district concluded that "the essence of [the Thomases'] allegations against [the banks] is that they failed to clearly inform [the Thomases] of the amount owed on their note and did not approve [them] for a permanent loan modification." *Thomas*, 2011 WL 5880988,

---

[8] *Hidden Forest Homeowners Ass'n v. Hern*, No. 4:10-CV-00551, 2011 WL 6089881, at *4 (Tex. App.—San Antonio 2011, no pet. h.).

[9] 363 S.W.2d 899, 900–01 (Tex. Civ. App.—Fort Worth 1962), *aff'd in part, rev'd in part on other grounds*, 369 S.W.2d 927 (Tex. 1963).

[10] *De Franchesci v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 205 (5th Cir. 2012).

[11] *Id.* (citing *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 868-69 (Tex. App.—Dallas 2008, no pet.).

[12] *Hidden Forest,* 2011 WL 6089881, at *5 (quoting *McDonald v. Bennett*, 674 F.2d 1080, 1098 n.8 (5th Cir. 1982)).

at *10.  Because those allegations are distinguishable in both degree and kind from "the outrageous collection techniques" required to sustain an intentional-tort claim under Texas law, the district court did not err in granting summary judgment on this issue.

There is also no summary-judgment evidence of negligent misrepresentation.  As the district court noted, "[a] promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact."  *Id.* (quoting *BCY Water Supply Corp. v. Residential Inv., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied)).  The court further found that the Thomases' only evidence in support of their negligent-misrepresentation claim that even possibly alleged an "existing fact" was an affidavit from Pete Thomas stating that "[Appellees] told [the Thomases] their loan modification was in process, and later, that it was in underwriting."  *Id.* at *11.  The Thomases' attempt to characterize the banks' supposedly broken promises as "existing facts" is unpersuasive and unsupported by the summary-judgment record.  Because representations regarding future loan modifications and foreclosure constitute "promises of future action rather than representations of existing fact," De Franchesci, 477 F. App'x at 205, the negligent-misrepresentation claim was properly dismissed.  Because the Thomases have abandoned their gross-negligence claim, we also affirm the district court on that issue.

## V.

The Thomases contend that they provided summary-judgment evidence that the banks violated Sections 392.301(a)(8), 392.304(a)(8) and (19), and 392.303(a)(2) of the Texas Finance Code.  Section 392.301(a)(8) prohibits a "debt collector" from "threatening to take an action prohibited by law."  The Thomases assert that the banks attempted to foreclose while loan-modification discussions were ongoing and improperly appointed a substitute trustee.  The Thomases,

however, point to no summary-judgment evidence supporting those allegations, nor do they explain how those actions, even if they actually occurred, were prohibited by law. Additionally, the Thomases do not explain how their claimed damages relate to Section 392.301(a)(8).

The Thomases maintain that, by failing to modify their loan despite promising to do so, the banks "misrepresent[ed] the character, extent, or amount of a consumer debt." TEX. FIN. CODE § 392.304(a)(8). Although the district court did not directly address those claims, another district court has recently noted that "[d]iscussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of [a] debt."[13] Notably, also, the 2009 and 2010 loan-repayment agreements explicitly preserved the original mortgage terms and preserved EMC's right to initiate foreclosure, without notice, if the Thomases failed to make timely payments.

Although the Thomases further allege that the banks used "false representation or deceptive means to collect a debt," *id.* § 392.304(a)(19), they have pointed to no summary-judgment evidence that the banks misrepresented the amount owed. Nor do they direct us to any authority indicating that the banks' failure to modify their loan as promised constitutes a violation of Section 392.304(a)(19). The Thomases also allege that the banks' misrepresentation of the amount due violated the prohibition on the collection or attempted collection of unauthorized fees. *See* TEX. FIN. CODE § 392.303(a)(2). As the district court noted during the pre-trial conference, however, conclusional allegations of *unexplained* fees (the only evidence proffered by the Thomases) do not constitute evidence of *improper* fees.

---

[13] *Watson v. Citimortgage, Inc.*, 4:10-CV-707, 2012 WL 381205, at *7 (E.D. Tex. Feb. 3, 2012).

VI.

Although the Thomases conceded that they did not *previously* make a qualified written request for an accounting within the meaning of RESPA, they maintain that the district court erred by not granting their request for a prospective equitable accounting.[14]  We disagree.  The Thomases' "bare assertion that they are entitled to accounting" is legally insufficient to withstand dismissal, "because they have not alleged that they are unable to attain pertinent information through ordinary discovery procedures."  *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 737-38 (E.D. Tex. 2011).  Because the district court properly granted summary judgment on all underlying substantive claims, the Thomases' requests for declaratory and injunctive relief necessarily fail.[15]

AFFIRMED.

---

[14] Because the district court did not directly address this issue, the Thomases' request for an accounting arguably survived summary judgment until the district court dismissed all remaining claims.

[15] The Thomases have failed to state a claim for declaratory relief, because it is predicated on their breach-of-contract claim that was properly dismissed.  Similarly, a request for injunctive relief absent an underlying cause of action is fatally defective.  *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).