# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 10, 2013

No. 12-41009
Summary Calendar

Lyle W. Cayce
Clerk

PHILIP WATSON; JANINE WATSON,

Plaintiffs–Appellants,

v.

CITIMORTGAGE, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:10-CV-707

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Philip and Janine Watson (the Watsons) appeal the district court's grant of summary judgment disposing of their claims against CitiMortgage, Inc. (CitiMortgage). We affirm.

## I

In 2005, the Watsons obtained a home-purchase loan from CitiMortgage, executing a note payable to CitiMortgage and a deed of trust that placed a lien

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

on the property. The Watsons made timely installment payments on the note until 2009 when the Watsons defaulted on the loan, making their last payment in September of that year.

CitiMortgage sent the Watsons a notice of default on February 3, 2010, giving them thirty days to cure the default or risk acceleration and foreclosure. The Watsons did not cure or make any additional payments, but instead of accelerating the loan immediately, CitiMortgage encouraged the Watsons to apply for a loan modification. The Watsons first applied for the federal government's Home Affordable Modification Program (HAMP) but were rejected. The Watsons then applied for a non-HAMP modification program. Over the course of the summer and early fall of 2010, the Watsons periodically communicated with CitiMortgage to confirm that their application was still pending and to provide additional documentation as requested. The Watsons contend that throughout this period, representatives of CitiMortgage repeatedly assured them that CitiMortgage would not foreclose so long as the modification application was pending.

On October 2, 2010, while the Watsons' loan-modification application was still under review, CitiMortgage accelerated the debt and sent the Watsons notice of a foreclosure sale set for November 2, 2010. A week later, CitiMortgage informed the Watsons via email that their application had been approved and promised that a documentation packet was forthcoming. On October 20, CitiMortgage sent the Watsons another notice of foreclosure sale, this time scheduling the sale for December 7. The Watsons called CitiMortgage on October 25 and 28 and were informed that their application had been approved, but that the final modification was contingent on successful completion of a three-month trial-payment plan, with the first payment due on November 1. Although presented with the option to make the first payment over the phone, the Watsons declined. On November 2, the Watsons received the promised documentation packet confirming that their loan would be modified if they made

the three trial payments due in November, December, and January. The Watsons never attempted to make any payments under the trial plan.

The Watsons filed this suit in Texas state court on December 1, 2010, and obtained a temporary restraining order that prohibited CitiMortgage from proceeding with the December 7 foreclosure sale. CitiMortgage then removed the case to the United States District Court for the Eastern District of Texas. On February 3, 2012, the district court granted summary judgment in favor of CitiMortgage and dismissed all of the Watsons' claims. The Watsons remain in possession of the property, and CitiMortgage has not attempted to set a new foreclosure date.

## II

We review a district court's grant of summary judgment de novo, applying the same standard as the district court.[1] Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] When applying this standard, "we view the evidence in the light most favorable to the non-movant."[3] The Watsons argue that they presented sufficient evidence to demonstrate genuine issues of material fact on their claims for breach of contract, violation of the Texas Debt Collection Practices Act[4] (TDCPA), and negligent misrepresentation. They further argue that as a result, the district court erred in denying their request for a declaratory judgment.

The Watsons allege that CitiMortgage "breached the Deed of Trust contract by failing to give Plaintiffs the opportunity to reinstate the loan or cure the default" and that CitiMortgage's "conduct of deliberately . . . delaying and

---

[1] *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 638 (5th Cir. 2007).

[2] FED. R. CIV. P. 56(a).

[3] *Lozano*, 489 F.3d at 638.

[4] TEX. FIN. CODE §§ 392.001-.404 (West 2006).

misleading the Plaintiffs to the point of foreclosure . . . is a breach of the Deed of Trust contract and Note." Although the Watsons' own default (which they do not dispute) would ordinarily bar a breach-of-contract claim,[5] they argue that CitiMortgage waived its right to foreclose, or in the alternative, that CitiMortgage should be precluded from exercising its right by promissory estoppel. Neither argument is persuasive.

The Watsons enumerate thirteen examples of conduct by CitiMortgage that they claim raise a genuine issue of material fact as to whether CitiMortgage waived its right to foreclose. The alleged conduct can be roughly grouped into two categories: representations by CitiMortgage that it would not foreclose during modification discussions and specific communications demonstrating that CitiMortgage was reviewing the Watsons' modification applications. The Watsons also highlight apparently contradictory or confusing communications from CitiMortgage about the status of their application. For example, they point to a September 28, 2010, letter purporting to deny their modification application for lack of requested documents when the allegedly missing documents were in fact delivered on that day, prior to the deadline. Finally, the Watsons appear to argue that CitiMortgage waived its right to foreclose because it considered modification instead of "not mov[ing] to foreclose diligently." These arguments are without merit.

Under Texas law, a party may waive a contractual right by intentionally relinquishing it or by engaging in conduct inconsistent with that right.[6] A lienholder may waive the right to accelerate or foreclose through inconsistent

---

[5]  *See Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 341 (5th Cir. 2012) (citing *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)).

[6] *Stephens v. LPP Mortg., Ltd.*, 316 S.W.3d 742, 748 (Tex. App.—Austin 2010, pet. denied) (citing *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)); *see id.* at 748-49 ("The elements of waiver include (1) an existing right, benefit, or advantage held by a party, (2) the party's actual knowledge of its existence, and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008))).

conduct such as repeatedly accepting late payments.[7]  However, Texas courts have also made clear that a lienholder does not waive the right to foreclose merely by delaying foreclosure, entering into modification negotiations, or otherwise exercising forbearance without additional conduct inconsistent with the right to foreclose.[8]  Nor does a mortgagor waive its right to foreclose by declining to pursue alternative contractual remedies.[9]

We agree with the district court that based on the record, there is no genuine issue of material fact that CitiMortgage did not waive its rights.  First and foremost, the deed of trust contains an unambiguous nonwaiver provision, providing that "[a]ny forbearance by [CitiMortgage] in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy," and that "[e]xtension of time for payment or modification . . . shall not operate to release the [Watsons'] liability."  The Watsons cite an unpublished case of this court, *U.S. Bank, N.A. v. Kobernick*,[10] for the proposition that a "nonwaiver clause may, in some circumstances, be waived."[11]  However, they fail

---

[7] *E.g.*, *Dhanani Invs., Inc. v. Second Master Bilt Homes, Inc.*, 650 S.W.2d 220, 223 (Tex. App.—Fort Worth 1983, no writ); *McGowan v. Pasol*, 605 S.W.2d 728, 732 (Tex. App.—Corpus Christi 1980, no writ); *see also Trickey v. Gumm*, 632 S.W.2d 167, 170 (Tex. App.—Waco 1982, no writ) (holding that a lienholder may waive the right to foreclose for breach of a due-on-sale clause when the lienholder is aware of the unauthorized sale and continues to accept payment without objection for an extended period).

[8] *See, e.g.*, *Stephens*, 316 S.W.3d at 749; *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 911-12 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *Veltmann v. Hoffman*, 621 S.W.2d 441, 442 (Tex. App.—San Antonio 1981, no writ) ("We know of no case holding that a lienholder who, at the request of the debtor, postpones a nonjudicial foreclosure sale in order to afford the debtor an opportunity to avoid loss of his land is to be penalized by being deprived of the right to foreclose."); *see also A.R. Clark Inv. Co. v. Green*, 375 S.W.2d 425, 434 (Tex. 1964) (holding that a note holder had not waived its right to accelerate merely by engaging in protracted settlement negotiations with the debtor over the alleged default).

[9] *See Cooper v. Cochran*, 288 S.W.3d 522, 537-38 (Tex. App.—Dallas 2009, no pet.).

[10] 454 F. App'x 307 (5th Cir. 2011) (per curiam).

[11] *Kobernick*, 454 F. App'x at 315 (quoting *Straus v. Kirby Court Corp.*, 909 S.W.2d 105, 108 (Tex. App.—Houston [14th Dist.] 1995, writ denied)).

to explain how that general proposition would apply to the circumstances in this case.  In any event, the facts in *Kobernick* and the Texas case it cited were materially different.[12]  We decline the Watsons' invitation to treat the nonwaiver clause in this case as a functionless ornament.

Furthermore, even disregarding the nonwaiver clause, none of CitiMortgage's conduct appears inconsistent with its rights.  Indeed, among the actions allegedly "inconsistent" with CitiMortgage's right to foreclose, the Watsons include the notice of acceleration and two letters setting a foreclosure date.  Although it is evident that CitiMortgage repeatedly invited and even encouraged the Watsons to apply for modification and sent several requests for additional documentation, none of its conduct is evidence that CitiMortgage intended to waive its contractual rights.  To the contrary, CitiMortgage repeatedly warned the Watsons that it retained the right to demand full payment and foreclose.  At most, the evidence demonstrates that CitiMortgage delayed foreclosure while attempting to reach an alternative agreement to protect its interests.  Such forbearance is not inconsistent with retaining the right to foreclose.

The Watsons' estoppel argument, premised on the same factual allegations, is also without merit.  The Watsons assert that they "were induced into remaining in default" by the promise of modification.  Yet they point to no evidence that they attempted, contemplated, or were even capable of curing their default.  Nor do they explain why, after their loan modification was approved, they remained in default and did not attempt to make any payments under the trial plan.  They concede that they were given the details of the plan and offered the opportunity to make a payment but declined.  Furthermore, the evidence demonstrates that the trial payments could be made at any time during the

---

[12] *Id.*; *Straus*, 909 S.W.2d at 108-09.

relevant month, and the Watsons admit that they never contacted CitiMortgage to tender payment.

Under Texas law, promissory estoppel requires "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment."[13]  The promise cannot be "too vague and indefinite," and "[a] promisee's reliance must be both reasonable and justified."[14] A plaintiff's recovery under promissory estoppel is limited to reliance damages.[15]

The Watsons fail to demonstrate a genuine issue of material fact on any element of promissory estoppel.  First, the Watsons fail to identify the specific or definite promise by CitiMortgage.  Although the evidence demonstrates that CitiMortgage exercised forbearance and expressed a willingness to consider modification, the Watsons point to no evidence supporting the assertion that CitiMortgage's representations were anything more than "indefinite assurance[s] of an ongoing negotiation process."[16]  It is axiomatic that without a definite promise there can be no foreseeable reliance.  Even if CitiMortgage's representations constituted a definite promise, the Watsons fail to articulate how they detrimentally relied on the promise or how such reliance would have been reasonable or justified.  Nor do they explain how they were damaged by their alleged reliance.  In their First Amended Complaint, the Watsons allege that they "have incurred damages, including mental anguish, filing fees, and reasonable and necessary attorney fees," but do not explain how those damages

---

[13] *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

[14] *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 300 (5th Cir. 2010) (quoting *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 570 (Tex. App.—Dallas 1989, no writ)) (internal quotation marks omitted); *see also id.* at 301 ("[S]tatements of an intention to reach agreement have been found too vague and indefinite to survive summary judgment on promissory estoppel").

[15] *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549-50 (5th Cir. 2010); *see Fretz Const. Co. v. S. Nat'l Bank of Hous.*, 626 S.W.2d 478, 483 (Tex. 1981).

[16] *Addicks Servs.*, 596 F.3d at 301.

result from their reliance on any promises by CitiMortgage. In sum, the record supports the district court's conclusion that no genuine issue of material fact existed as to promissory estoppel.

The Watsons next argue that the district court erred in granting summary judgment on their claims under the TDCPA. Specifically, the Watsons claim that CitiMortgage violated sections 392.301(a)(8), 392.303(a)(2), 392.304(a)(8), and 392.304(a)(19) of the Texas Finance Code. None of these claims has merit. With respect to section 392.301(a)(8), the Watsons make only a passing reference to this section and therefore, due to inadequate briefing, have waived whatever argument they may have had.[17]

Section 392.303(a)(2) prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."[18] The Watsons argue that CitiMortgage violated this section by assessing foreclosure costs and attorney's fees. However, because the deed of trust expressly authorizes CitiMortgage to add these fees to the Watsons' debt, section 392.303(a)(2) is inapplicable.[19] The Watsons also fail to identify any

---

[17] *See* FED. R. APP. P. 28(a)(9)(A) ("[A]ppellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 413-14 (5th Cir. 2003).

[18] TEX. FIN. CODE § 392.303(a)(2) (West 2006).

[19] The deed of trust provides in pertinent part:

If . . . Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . , then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest . . . . Lender's actions can include, but are not limited to . . . paying reasonable attorneys' fees . . . .

Any amounts disbursed by Lender under this Section [] shall become additional debt of Borrower secured by this Security Instrument.

evidence that CitiMortgage "misrepresent[ed] the character, extent, or amount of [the Watsons'] debt" in violation of section 392.304(a)(8).[20]     Finally, the Watsons do not explain how and we find no evidence that either the scheduling of the December 7 foreclosure sale or the delayed arrival of the loan modification documents constitutes a "false representation or deceptive means to collect a debt" in violation of section 392.304(a)(19).[21]     Dismissal of the TDCPA claims was therefore proper.

Likewise, the Watsons' negligent misrepresentation claim fails because, "under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort."[22]     Finally, the Watsons' request for a declaratory judgment was properly dismissed as it depends on the success of their other claims.[23]

\*     \*     \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[20] TEX. FIN. CODE § 392.304(a)(8); *see Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 (5th Cir. 2012) ("[D]iscussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of [a] debt." (second alteration in original)).

[21] TEX. FIN. CODE § 392.304(a)(19); *see Thomas*, 499 F. App'x at 343.

[22] *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 205 (5th Cir. 2012) (internal quotation marks omitted); *see also Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

[23] *Sid Richardson Carbon & Gasoline v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996).