

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00204-CV

FREDDIE L. SHELLNUT                                    APPELLANT

V.

WELLS FARGO BANK, N.A., D/B/A                          APPELLEES
AMERICA'S SERVICING
COMPANY; U.S. BANK NATIONAL
ASSOC., AS TRUSTEE FOR
CREDIT SUISSE FIRST BOSTON
MORTGAGE SECURITIES CORP.,
HOME EQUITY ASSET TRUST
2006-7, HOME EQUITY PASS-
THROUGH CERTIFICATES
SERIES 2006-7

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 096-264305-13

----------

# MEMORANDUM OPINION[1]

----------

This appeal by a homeowner against a home-equity loan lender and its loan servicer involves similar factual allegations and issues raised in a striking number of suits across this state, mostly in the federal courts. A common theme in these suits is the contention that the loan servicer, lender, or both—either deliberately or negligently—misled a homeowner who had defaulted on his or her monthly payments into believing that he or she might be eligible for a loan modification and that the loan modification application process would forestall or waive imminent foreclosure proceedings on the home-equity note and deed of trust. Most homeowners, like the appellant in this case, have had little success in defending these claims against summary judgment or a 12(b)(6) dismissal motion,[2] much less in bringing their claims to trial or obtaining a judgment, considering that most cannot overcome the undisputed fact that they have been in, and remain in, default.

In this case, Freddie L. Shellnut sued his home-equity loan lender—U.S. Bank National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-7, Home Equity Pass-Through Certificates Series 2006-7—and its loan servicer—Wells Fargo Bank, N.A.,

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Fed. R. Civ. P. 12(b)(6), (c) (allowing dismissal of suit when the pleadings fail to state a claim upon which relief can be granted).

doing business as America's Servicing Company—in the 96th District Court after U.S. Bank had obtained a judicial foreclosure order in the 352nd District Court. After discovery, during which Shellnut filed two lengthy motions to compel and U.S. Bank and Wells Fargo raised numerous objections, the trial court granted a take-nothing summary judgment. On appeal, Shellnut raises a single issue generally challenging the summary judgment. Within that general issue, he raises four subissues: (1) he raised a fact issue on his breach of contract claim; (2) U.S. Bank and Wells Fargo did not conclusively prove that the statute of frauds bars his claims for fraud, negligent misrepresentation, and violation of the Texas Debt Collection Act (TDCA); (3) U.S. Bank and Wells Fargo did not conclusively prove that the economic-loss rule bars all recovery on these same tort claims; and (4) the trial court erred by denying his amended second motion to compel discovery.

Throughout the trial court proceedings and this appeal, U.S. Bank and Wells Fargo have characterized Shellnut's allegations as nothing more than an attempt to avoid foreclosure by complaining that they wrongfully refused to modify his loan when he fell behind on his payments, a remedy that he had no right to under the loan documents and which neither U.S. Bank nor Wells Fargo had any duty to consider or grant. But the allegations in Shellnut's original petition—whether ultimately true or not—cannot be distilled to quite so simple a premise.

3

After carefully reviewing the petition, the motion for summary judgment, Shellnut's response, and the reply, we reverse the summary judgment in part. Because under Texas law Shellnut's fraud and negligent misrepresentation claims are not barred to the extent that he seeks non-benefit-of-the-bargain damages and because the claim-specific grounds for summary judgment on his negligent misrepresentation claim do not entitle U.S. Bank and Wells Fargo to summary judgment, we reverse the summary judgment on those claims to the extent Shellnut seeks non-benefit-of-the-bargain damages. In addition, because Shellnut's TDCA-violation claims are not barred by the economic-loss rule— except for his claim that U.S. Bank and Wells Fargo violated the TDCA by wrongfully threatening to foreclose—we reverse the summary judgment for that claim to the extent it states claims based on their actions other than threatening to foreclose. But because Shellnut failed to raise a fact issue on his breach of contract claim, we affirm the summary judgment as to that claim. We also affirm the summary judgment on the remaining claims in his original petition because he did not challenge that part of the summary judgment on appeal.

### Shellnut Obtains Home-Equity Loan, Falls Behind on Payments, Seeks Assistance, and Sues After U.S. Bank Threatens Foreclosure

Shellnut obtained a home-equity loan in 2006 from Aames Funding Corporation doing business as Aames Home Loan, signing a note and a deed of trust to secure the loan. The note has a thirty-year term and, as required by Texas law, a nonrecourse liability provision. *See* Tex. Const. art. XVI,

4

§ 50(a)(6)(E); *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 917 (Tex. 2015); *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("A nonrecourse note has the effect of making a note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note.").[3]  After Shellnut signed the loan documents but before 2010, U.S. Bank became the holder of the note, and Wells Fargo became the loan servicer.

Shellnut missed some of his monthly payments during 2010; although he was able to make up most of the missed payments at various times during that year, he ended 2010 about one payment behind.  Also during 2010, Shellnut began calling Wells Fargo to seek its assistance in obtaining either a loan modification with a lower monthly payment or any other option that would help him get caught up on his payments.  Shellnut admitted in discovery that he and U.S. Bank entered into a special forbearance agreement in 2010.[4]  Additionally, Shellnut was offered at least one loan modification in June 2010, but he rejected it because the monthly payments "were considerably increased."  According to Shellnut, Wells Fargo informed him throughout 2010 that he was eligible for a

---

[3]Thus, the lender of a defaulted home-equity loan is limited by Texas law to seeking repayment of the loan only from the sale of the residence and may not seek a deficiency judgment against the borrower for any of the debt not paid by the foreclosure sale price.  *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 917 (Tex. 2015).

[4]That agreement is not included in the appellate record.

loan modification and that his request for a modification was being considered; it also instructed him to stop sending loan payments during the modification process. Shellnut stopped making payments altogether after January 2011.[5] In May 2011, Wells Fargo sent Shellnut a notice of acceleration and intent to foreclose, but it did not start foreclosure proceedings at that time.

Throughout the remainder of 2011 and 2012, Shellnut remained in contact with Wells Fargo seeking, among other things, the exact amount necessary to reinstate the loan in accordance with the deed of trust. Shellnut received at least three reinstatement quotes from U.S. Bank's foreclosure attorney in 2011, but he refused to tender payment in reliance on the quotes because they contained a disclaimer—that U.S. Bank "reserves the right to collect additional amounts as necessary to complete the reinstatement"—and because neither the foreclosure attorney nor Wells Fargo would agree in a separate writing that no additional fees or costs would be assessed to reinstate the loan. In August 2012, approximately two and one-half years after Shellnut had first contacted Wells Fargo seeking loan repayment assistance, Wells Fargo sent Shellnut a letter informing him that he was not entitled to a loan modification because "the investor that ultimately owns your mortgage . . . has declined the request." A Wells Fargo representative

---

[5]Shellnut indicates in his reply brief that during this suit he has made monthly payments into the trial court's registry, but nothing in the record supports this statement or shows when he began making these monthly payments.

also told Shellnut that the loan was no longer eligible for modification because it had been in default for more than six months.

In September 2012, U.S. Bank filed a petition for judicial foreclosure of the loan[6] in the 352nd District Court, ultimately securing a court order allowing it to foreclose. After U.S. Bank obtained its order but before it could complete the foreclosure, Shellnut sued both U.S. Bank and Wells Fargo (collectively Lender)[7] in the 96th District Court alleging causes of action for breach of contract, promissory estoppel, fraud, violation of the TDCA and the Deceptive Trade Practices Act (DTPA), negligent misrepresentation, and negligent hiring. Shellnut's suit stayed the foreclosure order; there do not appear to have been any further proceedings in the 352nd District Court. *See* Tex. R. Civ. P. 736.11(a). Lender then filed a counterclaim in this suit, again seeking a judicial foreclosure order.

During the discovery period, Shellnut filed two motions to compel discovery, and Lender filed a motion for protective order and summary judgment motion. The trial court partially granted both of Shellnut's motions to compel and partially granted Lender's motion for protective order. Several months thereafter, Lender filed an amended traditional motion for summary judgment. *See* Tex. R.

---

[6]A lien securing repayment of a home-equity note may only be foreclosed upon by a court order. *See* Tex. Const. art. XVI, § 50(a)(6)(D).

[7]Shellnut alleged that U.S. Bank was liable for all of Wells Fargo's actions under agency and respondeat superior theories.

7

Civ. P. 166a(c). As an initial matter, Lender argued that all of Shellnut's claims were based on its refusal to modify the loan and that all of his claims therefore failed because Shellnut was not entitled to a loan modification as a matter of law. Additionally, Lender contended that as a matter of law, all of Shellnut's claims— except his breach of contract claim based on the note and deed of trust (the loan documents)—were barred by the statute of frauds and the economic-loss rule. Finally, Lender raised additional, claim-specific grounds for all of Shellnut's claims except fraud.

The trial court granted summary judgment for Lender on all of Shellnut's claims without specifying any grounds. Lender then filed an unopposed motion to dismiss its counterclaim seeking an order allowing it to foreclose; the trial court granted the motion, dismissed the counterclaim, and rendered a final take-nothing judgment in Lender's favor.

### Appeal Limited to Breach of Written Contract, Fraud, Negligent Misrepresentation, and Violation of TDCA Claims

Although Shellnut has raised a general issue challenging the granting of the summary judgment, he has not presented argument within that issue challenging the propriety of the summary judgment on his promissory estoppel, DTPA, negligent hiring, and breach of verbal contract claims. Thus, we will review the propriety of the summary judgment only as to the claims he has addressed in his briefing: breach of the loan documents, fraud, violation of the TDCA, and negligent misrepresentation. *See LeBlanc v. Riley*, No. 02-08-234-

8

CV, 2009 WL 885953, at *3 (Tex. App.—Fort Worth Apr. 2, 2009, no pet.) (mem. op.); *Bingham v. Sw. Bell Yellow Pages, Inc.*, No. 02-6-229-CV, 2008 WL 163551, at *1 n.2 (Tex. App.—Fort Worth Jan. 17, 2008, no pet.) (mem. op. on reh'g).[8]

## Traditional Summary Judgment Standard of Review Applies

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

---

[8]Lender also contends that Shellnut abandoned his claims against U.S. Bank on appeal because he only refers to Wells Fargo in his brief. But because his petition specifically attributes Wells Fargo's actions to U.S. Bank for all of his claims, we do not agree. Shellnut confirmed in his reply brief that all of his claims against U.S. Bank are for actions taken by Wells Fargo under an agency or respondeat superior theory and that he therefore used the term Wells Fargo in his brief to refer to both parties.

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank*, 315 S.W.3d at 508–09; *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

## Because Most of Lender's Summary Judgment Grounds Are Based on Shellnut's Pleadings, We Briefly Summarize His Claims

Because the resolution of this appeal requires a firm command of the exact nature of the different claims in Shellnut's live pleading—his forty-seven page original petition—we will briefly summarize the claims on which he appeals.

### Breach of Contract

Shellnut pled that Lender breached the loan documents by refusing a tender of the full amount of his default as authorized by the loan documents and by failing to properly credit his account for the amount of the tender. Additionally, Shellnut claimed that Lender "demanded the payment of additional fees that were not authorized at that time." Finally, Shellnut contended that Lender refused to communicate to him in writing the amount needed to reinstate the note. According to Shellnut's pleading, he performed and tendered performance under the loan documents, and he was temporarily excused from future performance by Lender's offer to assist him in obtaining a federal home loan modification.

**Fraud**

Shellnut claimed that Lender materially misrepresented its "ability and willingness to process [his] application for a federal loan modification as well as the time frame the process . . . would likely take." He further contended that Lender misrepresented the likely cost to him "in the form of continued accrual of interest charges and the increased debt [he] would incur each month . . . in addition to his interest and unpaid principal in the form of attorney fees, foreclosure fees[,] and other service charges." Shellnut alleged that Lender was aware that these misrepresentations were false and intended that he act on them to his detriment. He specifically contended that Lender did not offer him or consider an internal loan modification, but rather represented to him "that another entity or party had decision making power and could decide, if given the proper forms and information, whether [he] qualified and could be offered essentially assistance from the federal government."

**TDCA Violation**

Shellnut claimed that in the course of attempting to collect amounts past due under the loan documents, Lender (1) voluntarily offered to assist him in completing a federal loan modification but failed to provide the assistance and delayed the process for two years and (2) refused to allow Shellnut to make payments on the loan while purporting to provide that assistance and as a result, "each month increased the debt with penalties and fees . . . dramatically increasing the amount of the debt by mispresenting what it was in fact doing."

11

According to Shellnut, this conduct violated section 392.304(a)(8) and (a)(14) of the Texas Finance Code. Tex. Fin. Code Ann. § 392.304(a)(8), (14) (West 2016). Shellnut further generally claimed that "after notice of representation and that the amount in question is disputed, [Lender] continued to contact [the Shellnuts] directly and continued to harass them for payment."

**Negligent Misrepresentation**

Shellnut included specific allegations that he contended amounted to negligent misrepresentation:

a. [Lender] made representations to [the Shellnuts] in the course of providing assistance with a federal home loan modification;

b. [Lender] supplied false information attempting to guide, advise[,] and direct [the Shellnuts] with regard to fees they would have to pay and not pay, with regard [to] the timeline the application process would take, as well as the amounts they would have to pay during the loan modification process . . . .

Shellnut also claimed generally that Lender "failed to use reasonable care in communicating the correct status of [the] mortgage loan and loan modification application."

**Damages**

In addition to alleging claim-specific damages—which we will address in our discussion of the economic-loss rule—Shellnut generally alleged that he is entitled to the following damages: lost equity in his home, lost earnings and time spent attempting to comply with Lender's modification requests, "cpa fees" and other expenses, damage to his credit score and credit reputation, mental anguish

12

damages, economic damages, exemplary damages, attorney's fees, and court costs.

**Summary Judgment Improper on General Ground That
Shellnut Had No Right to Loan Modification Because He Did Not
Allege Wrongful Refusal to Modify as Basis For These Claims**

As part of his first subissue, Shellnut argues that Lender was not entitled to summary judgment based on its broad characterization of his pleadings as primarily seeking relief from its refusal to modify his loan. We refer to this argument as subissue 1A.[9]

Lender's first ground for summary judgment was that all of Shellnut's complaints fail because they are "ultimately grounded in his contention that [Lender] 'wrongfully delayed' the loan modification process and 'misled' him regarding his ability to obtain a loan modification." According to Lender, because all of Shellnut's claims emanate from his contention that it wrongfully refused to modify his loan and because Shellnut has no right to a loan modification under Texas law, all of his claims fail. Although this first ground is not assigned a specific subissue in Shellnut's briefing, he does argue throughout his brief that his claims are not based on Lender's refusal to enter into a loan modification.[10] Rather, he contends that his claims are based on Wells Fargo's affirmative

---

[9]Shellnut raises two distinct arguments within this subissue and subissue 3.

[10]For purposes of this memorandum opinion, in addressing Lender's arguments, Shellnut's response, and Shellnut's allegations as to "all" claims, we refer only to those claims he preserved for appeal.

statements that Lender was considering a loan modification when it was not and that Wells Fargo would assist him in obtaining help with this loan modification from a federal government program when it either had no intention to do so or knew he could not obtain one. In other words, he alleges Lender was stringing him along in order to pad its post-default fees and charges labeled as collection costs.

We agree with Shellnut's characterization of his pleadings. None of his claims allege or are based on the premise that Lender wrongfully refused to modify his loan. Instead, he alleges that Wells Fargo wrongfully told him it would place his loan into a loan modification review or assist him in obtaining federal aid to modify the loan, without the intent to actually do so, for the purpose of adding extra, default-related fees and costs to the balance due under the note. He also alleges that Wells Fargo knew it could not provide him with assistance in obtaining a modification. Thus, the allegations in his pleadings are not premised upon an asserted right to a loan modification—which Lender did not have a duty to consider, and which Shellnut had no right to demand, under the loan documents—but rather the allegedly untruthful representation that he was being considered for a loan modification or other type of loan assistance, that caused him to take some actions and refrain from taking others.

In urging summary judgment on Shellnut's pleadings, Lender relied on numerous federal cases dismissing suits by defaulted borrowers against lenders and loan servicers because a borrower has no right to a loan modification. But

14

the holdings in those cases are fact-specific and in response to different allegations than those made by Shellnut; thus, they are inapposite.[11]   *See Calvino v. Conseco Fin. Servicing Corp.*, No. A-12-CA-577-SS, 2013 WL 4677742, at *7 (W.D. Tex. Aug. 30, 2013) (addressing argument that servicer wrongfully refused to offer loan modification); *Soufimanesh v. U.S. Bank, N.A.*, No. 4:12cv295, 2013 WL 3215744, at *9 (E.D. Tex. June 24, 2013) (noting that U.S. Bank was not required to modify loan in addressing borrower's argument that bank's statement that it was considering a loan modification effected a withdrawal of the foreclosure notices it had sent borrower); *Singha v. BAC Home Loans Servicing, LP*, No. 4:10-CV-692, 2012 WL 3904345, at *4 (E.D. Tex. Aug. 7, 2012) (holding that because borrower had no right to a loan modification, lender's refusal to modify was not a repudiation for purposes of an anticipatory breach claim), *adopting report & recommendation*, 2012 WL 3904063 (E.D. Tex. Sept. 7, 2012), *aff'd*, 564 F. App'x 65 (5th Cir. 2014); *Mahmood v. Bank of Am., N.A.*, No. 3:11-CV-03504-M-BK, 2012 WL 527902, at *3 (N.D. Tex. Jan. 18, 2012) (addressing claim for failure to negotiate a loan modification), *accepting findings, conclusions & recommendation*, 2012 WL 527901 (N.D. Tex. Feb. 16, 2012); *Mulder v. Select Portfolio Servicing, Inc.*, No. 1:11-CV-00862-SS, slip op.

---

[11]Federal cases addressing Texas law in similar circumstances are particularly persuasive to Texas courts, *see Robeson v. Mortg. Elec. Registration Sys., Inc.*, No. 02-10-00227-CV, 2012 WL 42965, at *4 n.4 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (mem. op.); however, we must be mindful that the holdings in those cases are governed by federal procedural rules of pleading and proof, which in some instances may dictate a different result.

15

at 2 (W.D. Tex. Sept. 30, 2011) (order setting hearing on motion seeking to temporarily restrain foreclosure) (noting—without describing the specific allegations in Mulder's pleadings—that neither law nor equity were on Mulder's side since he had been in default for almost a year and had not clearly alleged "any legal excuse for his failure to make his loan payments").[12]

Accordingly, we conclude and hold that Lender was not entitled to summary judgment on all of Shellnut's claims on this ground. We sustain subissue 1A.

### Shellnut Failed to Raise Fact Issue Precluding Summary Judgment on Breach of Contract Claim

The remainder of Shellnut's first subissue—subissue 1B—challenges the summary judgment on his breach of contract claim.

In response to two of the alleged breaches of the loan documents that Shellnut raised—(1) that when he attempted to tender the entire amount of his past due payments on the note, Lender "did not bring the account current or properly credit [his] payments" and (2) that Lender "refused to communicate in

---

[12]Lender cited two other cases in its motion for summary judgment, but those courts dismissed TDCA-related claims with different allegations: *Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 348 (5th Cir. 2014) (holding that borrower's claim he was misled to believe that he qualified for and would be approved for a loan modification, despite knowing that he was not eligible for a loan modification, did not state a claim under TDCA section 392.304(a)(8) and (a)(19)); *Bracken v. Wells Fargo Bank, N.A.*, 13 F. Supp. 3d 673, 684 (E.D. Tex. 2014) (holding that claims of delay of loan modification process and misleading borrower into believing modification would be approved did not raise fact issue to survive summary judgment on TDCA sections 392.303(a)(2) and 392.301(a)(8)), *aff'd*, 612 F. App'x 248 (5th Cir. 2015).

16

writing . . . the amount needed to reinstate the note"—Lender contended that its evidence conclusively proved that the allegations are false. Lender attached Shellnut's deposition, in which he admitted that he had never tendered the entire amount of past due payments on the note, and three separate reinstatement quotes Lender sent to Shellnut in June and July of 2011. Shellnut did not present any controverting summary judgment evidence; therefore, the trial court did not err by granting summary judgment as to these two breach of contract allegations.

As to Shellnut's remaining breach of contract allegation—that instead of accepting payments, Lender "demanded the payment of additional fees that were not authorized at that time," which Shellnut explained in his summary judgment response is an allegation that Lender charged unauthorized fees and misapplied payments—Lender argued that the claim is "barred in whole or in part because [Shellnut] has not tendered and cannot tender the entire indebtedness on the loan."[13] In other words, Lender challenged Shellnut's ability to prove the second element of a breach of contract suit: "performance or tendered performance by the plaintiff." *See Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.). Shellnut responded that a fact issue exists as to

---

[13]Lender raised this ground on all of the breach of contract allegations, but because summary judgment was proper on the remaining allegations for other reasons, we need not address it with respect to them. *See* Tex. R. App. P. 47.1.

whether he was excused from performing under the loan documents because of Lender's prior material breach.[14]

Generally, a defaulting party under a contract cannot maintain a suit for its breach. *Ramex Constr. Co. v. Tamcon Servs. Inc.*, 29 S.W.3d 135, 137 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Joseph v. PPG Indus.*, 674 S.W.2d 862, 867 (Tex. App.—Austin 1984, writ ref'd n.r.e.) (op. on reh'g); *see also Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."). But that party may nevertheless sue for breach of the contract if its default was excused by the other party's prior material breach. *See Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) ("A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform."). Whether a party breached an agreement is generally a question of law for the court unless the evidence of the parties' conduct is disputed. *See Greater Hous. Radiation Oncology, P.A. v.*

---

[14]Shellnut does not appear to argue that Lender breached any post-default obligations. *See Franklin v. BAC Home Loans Servicing, L.P.*, No. 3:10-CV-1174-M, 2011 WL 248445, at *2 (N.D. Tex. Jan. 26, 2011) ("It is illogical for the Court to conclude that Plaintiff cannot enforce BAC's obligations, assumed to be contractual, which arise after Plaintiff's default merely because Plaintiff is in default.").

*Sadler Clinic Ass'n, P.A.*, 384 S.W.3d 875, 888–89 (Tex. App.—Beaumont 2012, pets. denied).

In his response to the motion for summary judgment, Shellnut admitted that "[i]t is not in dispute that [he] missed a . . . payment in 2009, possibly earlier." Additionally, in his summary judgment affidavit, he averred that he began missing payments in 2010, that he made payments sporadically throughout 2010, and that he ended 2010 around one payment behind. Although he contends that Wells Fargo's continued demands for payment indicate that it had elected to treat the contract as continuing—implicitly waiving his default—the deed of trust itself contains a nonwaiver provision:

> Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Additionally, the deed of trust provides that the borrower's performance is not contingent upon the Lender's performance: "No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Interest or performing the covenants and agreements secured by this Security Instrument." A similar

19

provision is contained in the note, under the title "BORROWER'S FAILURE TO PAY AS REQUIRED" and subtitle "No Waiver by Note Holder": "Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time." Thus, under the plain language of the loan documents, Shellnut's obligation to make timely loan payments was not excused by Lender's continued demands for performance under the contract and delay in instituting any remedies such as acceleration and foreclosure. *See Creech v. Christian*, No. 05-08-00952-CV, 2009 WL 2902940, at *3 (Tex. App.—Dallas Sept. 11, 2009, pet. denied) (mem. op. on reh'g); *A.G.E. v. Buford*, 105 S.W.3d 667, 676 (Tex. App.—Austin 2003, pet. denied); *see also Watson v. CitiMortgage, Inc.*, 530 F. App'x 322, 326 (5th Cir. 2013) (holding that bank did not waive its rights under deed of trust with nonwaiver clause); *Nguyen v. Jpmorgan Chase Bank, N.A.*, No. G-12-125, 2014 WL 12537069, at *2 (S.D. Tex. Mar. 5, 2014) (rejecting claim that lender waived Nguyen's default because of nonwaiver clause, noting that "the Nguyens contracted in advance that they would not be able to assert waiver"), *adopting report & recommendation*, 2014 WL 12539242 (S.D. Tex. Apr. 21, 2014); *In re GuideOne Nat'l Ins.*, No. 07-15-00281-CV, 2015 WL 5766496, at *3 (Tex. App.—Amarillo Sept. 29, 2015, orig. proceeding) (mem. op.) ("Non-waiver clauses are generally considered valid and enforceable.").

Shellnut claims that he raised a fact issue as to whether Lender breached the loan documents first, thus excusing his default. Shellnut presented evidence that he contends shows that Lender provided him inaccurate information regarding the payoff amount of his loan, charged fees not authorized by the loan documents, and made wrongful property tax and insurance payments on his behalf even though Lender had waived its right to have Shellnut pay these expenses into escrow. But none of this evidence raises a fact issue as to whether Lender materially breached first.

Although the May 23, 2010 and August 15, 2010 past due letters contain different amounts, the evidence shows that during both of those months, Shellnut was delinquent by at least two payments. The May 2010 letter shows that Lender credited a partial payment that month, and Lender's internal records show that in June 2010, Shellnut made a lump sum payment of $2,500, which would have brought him current through May 2010 and part of June. Although the August 15, 2010 letter shows that Shellnut was only behind for two monthly payments (instead of two and one half)—and no evidence explains whether Shellnut made an additional payment or was credited for some other reason— any error would have been in Shellnut's favor. The May 2010 letter indicates that Lender charged Shellnut a $45 unspecified fee; likewise, the August 2010 letter indicates that Lender charged Shellnut a $50 unspecified fee. But Shellnut did not present any evidence that these unspecified fees were not authorized by the loan documents. *See, e.g., Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343

21

(5th Cir. 2012) (noting, in evaluating TDCA-violation claim, that "conclusional allegations of *unexplained* fees . . . do not constitute evidence of *improper* fees"). Thus, although the two letters show different amounts due and owing, that difference shows nothing more than the application of credits, payments, and $95 in fees.

Shellnut also contends that a loan modification quote dated June 2010 shows that Lender was in breach because it showed that Lender was charging him different amounts from what it demanded in the May and August 2010 default letters. But whether Lender used correct information to calculate a proposed modification—which Shellnut admits Lender was not obligated to offer under either the note or deed of trust and which Shellnut declined—does not show a prior material breach of either of those documents.

Additionally, although Shellnut offered some evidence that Lender's internal records showed that Lender made escrow advances for property taxes in excess of what Tarrant County records show was actually assessed for years 2009 through 2011, there is no evidence of how Tarrant County applied or credited those payments or whether it refunded any overpayment. The Tarrant County record also shows overpayment of property taxes for the years 2005, 2008, and 2009, before Lender's internal records show that it made advances for the payment of property taxes. But that same Tarrant County record also shows underpayment of Shellnut's property taxes for 1998 through 2002. In fact, the Tarrant County record provided by Shellnut shows that from 1994 through 2014,

22

the total amount of property taxes paid is less than the total amount levied by over $5,000. Thus, Shellnut did not present evidence showing that Lender breached the loan documents by paying his property taxes.

Even if Shellnut had shown that Lender had overpaid his property taxes, he does not indicate how that overpayment—which according to Lender's internal records did not begin until December 2010, months after Shellnut began missing payments—is a breach of the loan documents. Shellnut's main argument regarding the property tax and insurance payments[15] made by Lender appears to be that Lender failed to notify him before revoking its initial waiver of escrow as required by section 3 of the deed of trust. But that provision requires notice to the borrower only upon Lender's revocation of its escrow waiver "for any reason"; the deed of trust also provides that Lender can make such payments (without requiring prior notice) if the borrower failed to make the payment. Shellnut did not bring forward any evidence—other than a general assertion that he was making insurance payments on his own and his specific assertion that in 2014, his insurance company refunded him what he had personally paid for insurance—showing that before his default, Lender paid property taxes or property insurance that he had already timely paid and for which he was not credited or did not receive a refund.

_____

[15]Lender's internal records show that the first insurance payment occurred in January 2010 and that another one was made in November 2010.

Shellnut also argued in his summary judgment response that Lender breached first by charging fees and costs "necessary to originate, evaluate, maintain, record, insure, or service" the loan over the three percent ceiling mandated by the Texas constitution, which is specifically incorporated into the loan documents.[16]  *See* Tex. Const. art. XVI, § 50(a)(6)(E).  But even if Shellnut could challenge any post-loan closing fees assessed by Lender on this basis— which we do not hold—the only evidence of the assessment of such fees and costs prior to Shellnut's ceasing payments altogether in February 2011 is the unspecified $95 fees charged by Lender in May 2010 and August 2010.  Either separately or together, these fees do not exceed the three percent cap in the constitutional provision.

To the extent that Shellnut argues that the trial court should have allowed him an opportunity to replead his contractual allegations before granting the motion for summary judgment, we disagree.  Shellnut did not amend his pleadings, only seeking leave to amend them after the trial court granted the summary judgment motion, and he never alleged that Lender failed to follow

---

[16]Lender contends that Shellnut did not preserve this argument because he did not explicitly identify this provision in his motion for summary judgment, but in the event that the facts alleged in his petition can be read to include fair notice of such an allegation, we address it.  *See* Tex. R. Civ. P. 45, 47; *Roark v. Allen*, 633 S.W.2d 804, 810 ("A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim.").  Shellnut did not bring a separate claim against Lender for violation of the Texas constitution.  *See, e.g.*, *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 544–46 (Tex. 2016); *Sims v. Carrington Mortg. Servs., L.L.C.*, 440 S.W.3d 10, 11–13 (Tex. 2014).

24

proper notice and pleading requirements for the motion proceeding. *See* Tex. R. Civ. P. 63, 166a(c). Moreover, Lender did not seek summary judgment on Shellnut's breach of contract claim for failure to state a claim; instead, it sought summary judgment on the ground that because of his default, he could not prove the element of performance or tendered performance and on the ground that his allegations were false. *See Gonzales v. Am. Postal Workers Union, AFL-CIO*, 948 S.W.2d 794, 799 (Tex. App.—San Antonio 1997, writ denied) (holding that trial court did not err by granting summary judgment without giving plaintiff a chance to replead when motion for summary judgment was based on plaintiff's failure to raise a fact issue on any viable legal theory rather than failure to state a claim). Accordingly, we conclude and hold that the trial court did not err by granting summary judgment before he had an opportunity to replead his breach of contract claims.

None of Shellnut's evidence shows a prior material breach excusing his default.[17] For these reasons, we conclude and hold that the trial court did not err by determining that Lender was entitled to summary judgment on Shellnut's breach of contract claim based on the loan documents. We overrule subissue 1B.

---

[17]To the extent that he alleges Lender prevented him from making payments, his own summary judgment evidence shows otherwise.

**Shellnut's Tort Claims Not Barred by Statute of Frauds**

In his second subissue, Shellnut argues that the trial court improperly granted summary judgment on all of his tort claims on Lender's second ground for summary judgment. In that ground, Lender alleged that because the loan documents are subject to the statute of frauds, and because all of the alleged representations upon which Shellnut allegedly relied were oral statements about modifying the loan, the statute of frauds bars all of Shellnut's claims. *See* Tex. Bus. & Com. Code Ann. §§ 26.01(a), (b)(6), 26.02 (West 2015).

"[T]he Statute of Frauds bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the Statute of Frauds." *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001); *see Hawkins v. Walker*, 233 S.W.3d 380, 396 (Tex. App.—Fort Worth 2007, no pet.). But to the extent a party seeks out-of-pocket damages incurred in relying upon misrepresentations and not simply to attempt to enforce an otherwise unenforceable contract, such a claim will survive. *Haase*, 62 S.W.3d at 799. This application of the statute of frauds has been used with other tort claims, including negligent misrepresentation. *See Heritage Constructors, Inc. v. Chrietzberg Elec., Inc.*, No. 06-14-00048-CV, 2015 WL 3378377, at *8 (Tex. App.—Texarkana Mar. 4, 2015, no pet.) (mem. op.); *Lam v. Phuong Nguyen*, 335 S.W.3d 786, 792 (Tex. App.—Dallas 2011, pet. denied); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 142 (Tex. App.—Corpus Christi 2006, pet. denied); *1001 McKinney Ltd. v. Credit Suisse First*

26

*Boston Mortg. Capital*, 192 S.W.3d 20, 29–30 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Although Shellnut's fraud, negligent misrepresentation, and TDCA-violation claims are premised on similar allegations as his breach of verbal contract claims (that he pled but did not challenge on appeal), he does not premise his tort claims on Lender's alleged failure to perform a verbal promise to modify the loan. Instead, he pled those claims in the alternative: that Lender deliberately misled him into believing that his participation in the loan modification process—regardless of whether he eventually obtained a modification—would not negatively impact his liability under the loan documents, or at least not to the extent that it ultimately did, and that he incurred damages by participating in that process. In other words, he is not seeking tort damages solely to obtain the benefit of an alleged bargain but as recompense for his futile participation in the loan modification process and resulting negative impact on his outstanding loan balance. *See Bagwell v. BBVA Compass*, No. 05-14-01579-CV, 2016 WL 3660403, at *5 (Tex. App.—Dallas July 7, 2016, no pet.) (mem. op.) ("In these types of cases, the viability of the fraud claim depends on the nature of the damages sought."); *see also Barraza v. Bank of Am., N.A.*, No. EP-12-CV-35-KC, 2012 WL 12886438, at *8 (W.D. Tex. Aug. 13, 2012) (holding that statute of frauds did not bar negligent misrepresentation claim, the basis of which was plaintiffs' complaint that because lender misrepresented that it was reviewing their foreclosure claim, they did not file for bankruptcy or seek another alternative

27

to foreclosure).[18]  The cases Lender cites as entitling it to summary judgment are inapposite.  *See Whittier v. Ocwen Loan Servicing, L.P.*, 594 F. App'x 833, 837 (5th Cir. 2014) (holding that statute of frauds barred negligent misrepresentation claim based on loan servicer's letter informing borrowers of necessary steps to qualify for a loan modification that borrowers contended was promise to modify loan); *Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 328–30 (5th Cir. 2013) (holding, on ground other than statute of frauds, that borrower's negligent misrepresentation claim was based on promise to take future action rather than misrepresentation of existing fact); *Traynor v. Chase Home Fin., L.L.C.*, No. 3:11-CV-800-K, 2013 WL 704932, at *3–4 (N.D. Tex. Feb. 27, 2013) (holding that statute of frauds barred claim based on promises to modify loan agreement); *Salazar v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1309-L, 2012 WL 995296, at *3–4 (N.D. Tex. Mar. 23, 2012) (holding that borrower's claim that lender should have processed and approved her loan modification application as verbally promised, rather than proceeding to foreclose, was barred by statute of frauds).

---

[18]Even if Shellnut's claims could be construed as seeking to enforce the benefit of a verbal promise to modify the loan, those claims would be barred by the statute of frauds only to the extent they sought benefit-of-the-bargain as opposed to out-of-pocket reliance damages.  *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007); *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001).

Because Lender had the burden to conclusively prove its affirmative defense that Shellnut's tort claims[19] are barred by the statute of frauds and because it did not do so, we conclude and hold that summary judgment is not proper on Shellnut's tort claims for that reason. *See Barraza*, 2012 WL 12886438, at \*8; *Bagwell*, 2016 WL 3660403, at \*6. We sustain Shellnut's second subissue.

---

[19]The federal cases Lender cites in its motion for summary judgment in support of its contention that the TDCA claims are barred by the statute of frauds are distinguishable. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014); *Kruse v. Bank of N.Y. Mellon*, 936 F. Supp. 2d 790, 794 (N.D. Tex. 2013). The plaintiffs in *Williams* alleged that the bank had engaged in deceptive debt collection means by foreclosing "after telling [the plaintiffs] they would be considered for a loan modification" and "failing to notify them of the status of their second loan modification request." 560 F. App'x at 241. The court held that because the Williamses' pleadings did not allege any damages outside of the alleged verbal agreement to modify the loan or any factual misrepresentation independent of the alleged verbal loan modification, their TDCA claim was likewise barred by the statute of frauds. *Id.* ("The Williamses have not alleged any damages outside of the alleged oral agreement to modify their loan or any other factual misrepresentation independent of the oral loan modification which we have already determined to be barred by the statute of frauds."). In *Kruse*, the only TDCA-violation alleged was the lender's misrepresentation that it would postpone foreclosure. 936 F. Supp. 2d at 794. The court recognized the exception to the statute of frauds in *Haase* but concluded that the Kruses failed to demonstrate any out-of-pocket damages independent of the alleged promise to delay foreclosure. *Id.* at 794–95. Here, Shellnut raised additional TDCA-related claims separate from the alleged verbal loan modification.

29

**"Economic-Loss Rule"[20] Does Not Bar TDCA-Violation Claim
But Partially Bars Fraud and Negligent Misrepresentation
Claims to Extent Shellnut Failed to Allege Independent Injury**

In part of his third subissue, which we will refer to as subissue 3A, Shellnut claims that the trial court erred by granting summary judgment on Lender's economic-loss rule ground. In that ground, Lender argued that it had conclusively proved that Shellnut's tort claims are barred by the economic-loss rule.

The supreme court has held that the economic-loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy. *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). But the rule does not bar all tort claims arising out of a contractual setting; instead, a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit. *Id.* The Texas Supreme Court has thus rejected a formulation of the economic-loss rule that "says you can never recover economic damages for a tort claim." *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, 508 S.W.3d 391, 422 (Tex. App.—Fort

---

[20]This court has held that the more appropriate reference is the "independent-injury rule," but for this case, we will use the parties' description of the rule. *See Cactus Well Serv., Inc. v. Energico Prod., Inc.*, No. 02-13-00186-CV, 2014 WL 6493231, at *3 & n.3 (Tex. App.—Fort Worth Nov. 20, 2014, pet. denied) (mem. op.).

Worth 2014) (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d

407, 418 (Tex. 2011)), *judgm't withdrawn & appeal dism'd*, 2015 WL 1119894, at

*1 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.).[21]  In determining

whether economic damages are recoverable for a tort claim independently of a

contract claim, we examine the nature of the plaintiff's alleged loss.  *Sw. Bell Tel.*

*Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *McPherson Rd. Baptist*

*Church v. Mission Inv'rs/Fort Worth, LP*, No. 2-08-412-CV, 2009 WL 2579647, at

*6 (Tex. App.—Fort Worth Aug. 20, 2009, no pet.) (mem. op.).

**Fraud and Negligent Misrepresentation**

Shellnut's fraud and negligent misrepresentation claims include the basic

assertion that Lender misrepresented his eligibility for a loan modification and its

intent to assist him in obtaining a modification for the purpose of increasing the

fees and costs it could charge him on the loan in addition to the past due loan

balance.  In the section of his petition devoted solely to his fraud claim, Shellnut

specifically pled to recover, in addition to the general damages pled in his

petition, (1) the loss of equity in his home because "the current required payoff

amount now equals or exceeds the value of the home now that all of the fees

---

[21]As one federal court has observed, "By design this rule makes it difficult for plaintiffs to recover for negligent misrepresentation when a contract exists.  If the state of the law were otherwise, then all contracts in which a breach left a party with no recovery could be fertile ground for a negligent misrepresentation claim.  But recovery in similar circumstances is not impossible."  *Petro-Hunt, L.L.C. v. Williams-S. Co., L.L.C.*, No. 3:13-CV-1588-P, 2016 WL 6806312, at *8 (N.D. Tex. Jan. 6, 2016), *aff'd,* 668 F. App'x 126 (5th Cir. 2016).

31

have been added to his account,"[22] (2) court costs and actual damages generally, (3) exemplary damages, and (4) damages related to Lender's attempts to foreclose on the loan. He did not specify any particular damages in the negligent misrepresentation section of his petition apart from the general damages he alleged in his petition.

Inherent in Shellnut's fraud and negligent misrepresentation claims is the allegation that, but for Lender's misrepresentations that attempting to seek a loan modification would not result in any negative effect to him under the loan documents, Shellnut would have attempted to mitigate damages arising from his default rather than participate in that process. Thus, his alleged damages related to that failure to mitigate are not an independent injury because they are damages to the subject matter of the loan—what he owed Lender and the disposition of the collateral, his home. Therefore, we conclude and hold that Shellnut's claims for fraud and negligent misrepresentation are barred by the

---

[22]As we have stated, because the note is nonrecourse, Lender could only look to the sales price of Shellnut's residence to satisfy any default, rather than obtaining a deficiency judgment against Shellnut. Thus, its assessment of additional fees and costs attributable to Shellnut's default prior to a foreclosure sale would result in a greater chance that the sale price at foreclosure would be in an amount to satisfy any remaining outstanding debt and reduce the chance that Shellnut would be entitled to any surplus. *See, e.g.*, *Patton v. Porterfield*, 411 S.W.3d 147, 158 (Tex. App.—Dallas 2013, pet. denied) (holding that common law rules relating to the distribution of excess proceeds from a foreclosure sale apply to the foreclosure of home-equity loans); *Conversion Props., L.L.C. v. Kessler*, 994 S.W.2d 810, 813 (Tex. App.—Dallas 1999, pet. denied) (stating common law rule that surplus proceeds after foreclosure sale are distributed first to inferior lienholders and then to holder of equity of redemption).

economic-loss rule to the extent he seeks damages for (a) lost equity—not due to any alleged decline in market value of the property during the time Lender purported to engage in the modification process but, as pled by Shellnut, due to the increased fees and costs that Lender charged under the loan documents as a result of his continuing default during the time he was seeking a loan modification—and (b) costs he incurred in connection with Lender's attempts to foreclose the loan. *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 634 (N.D. Tex. 2010) ("Plaintiff claims that Defendants' alleged misrepresentations resulted in the increase of his mortgage payments and excess interest and penalty fees. . . . Such injuries are in no way independent of the subject matter of the deed of trust or note, and so Plaintiff cannot recover for a tort of negligent misrepresentation."); *Long v. Sw. Funding, L.P.*, No. 03-15-00020-CV, 2017 WL 672445, at *3 (Tex. App.—Austin Feb. 16, 2017, no pet. h.) (mem. op.) ("The proper remedy for wrongful foreclosure is either: (1) damages equal to the difference between the value of the property and the indebtedness; or (2) the setting aside of the foreclosure sale."). But to the extent Shellnut seeks damages for lost earnings and time, out-of-pocket expenses, mental anguish, costs of treatment, and loss of credit score and credit reputation that would not be recoverable as consequential damages in a claim against Lender for breach of the loan documents,[23] those damages are more in the nature of reliance

---

[23]Lender did not include any ground in its motion for summary judgment challenging the availability generally of any out-of-pocket consequential damages

damages independent of the subject matter of the loan. *See Gross v. WB Tex. Resort Cmtys.*, L.P., No. 02-12-00411-CV, 2014 WL 7334950, at *7 (Tex. App.— Fort Worth Dec. 23, 2014, no pet.) (mem. op.) ("The Grosses argue that they are seeking not only benefit-of-the-bargain damages for breach of contract but also damages for the diminution in the value of the lot and consequential damages associated with having the lot but being unable to build on it, such as loss of prospective business, loss of credit reputation, and costs of delay in performance. . . . [W]e think that the Grosses' evidence raises a genuine issue of material fact with regard to the types of losses they have sustained that go beyond the benefit of the bargain."); *see also Murex v. GRC Fuels, Inc.*,

---

for any of Shellnut's claims. *See, e.g.*, *Barraza v. Bank of Am., N.A.*, No. EP-12-CV-35-KC, 2012 WL 12886438, at *15 (W.D. Tex. Aug. 13, 2012) (dismissing negligent misrepresentation claim as to certain types of pled damages, including mental anguish); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) ("For breach of contract, Chapa could recover economic damages and attorney's fees, but not mental anguish or exemplary damages. For fraud, she could recover economic damages, mental anguish, and exemplary damages, but not attorney's fees." (footnotes omitted)); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 443 (Tex. 1991) (holding that damages for negligent misrepresentation are limited solely to pecuniary loss and, thus, that plaintiffs could not recover mental anguish damages for such a claim). In its brief, Lender contends that "allegations of lost equity arising from a loan modification review could not support a claim in any event," citing *Lawrence v. Federal Home Loan Mortgage Corp.*, 808 F.3d 670, 674 (5th Cir. 2015). But Lender failed to raise this argument in its motion for summary judgment. Additionally, the ground for summary judgment in *Lawrence* was that the lost equity damages were too speculative, and the court held that in the face of that complaint, the plaintiffs had failed to bring forward evidence that "they had planned to sell the house, when they would have sold it, or for how much" and that "[w]ithout some evidence that Wells Fargo's misrepresentations denied them the chance actually to sell, the Lawrences' claim that they would have sold are 'speculation' that is not enough to oppose summary judgment." *Id.*

34

No. 3:15-CV-3789-B, 2016 WL 4207994, at *8–9 (N.D. Tex. Aug. 10, 2016) (holding that consequential losses were not related to loss of contractual expectancy); *Gordon v. Bank of Am. Corp.*, No. 3:15-CV-902-L, 2015 WL 5872659, at *4 (W.D. Tex. Oct. 5, 2015) (holding that claims for "out-of-pocket expenses, loss of credit and damage to his credit reputation, and interest and finance charges" alleged injury "over and above the economic loss to the subject matter of the note and deed of trust" sufficient to allow a claim); *Barraza*, 2012 WL 12886438, at *14 ("Here, Plaintiffs do[] not claim that Defendants made any misrepresentations related to existing duties or obligations under the Note or Deed of Trust; instead, Plaintiffs claim that Defendants negligently misrepresented the status of their loan modification application, which caused them to incur various compliance costs and refrain from taking steps to prevent foreclosure. . . . The Court finds that in such circumstances, section 552 imposes an independent legal duty separate from any contractual duties between Plaintiffs and Defendants."); *Wilkerson v. Citimortgage, Inc.*, No. 3:111-CV-1393-0-BK, 2011 WL 6937382, at *6–7 (N.D. Tex. Oct. 24, 2011) (holding, for purpose of negligence claim, that alleged damages for mental anguish and harm to credit history were not barred by economic-loss rule), *adopting findings, conclusions & recommendation*, 2012 WL 11039 (N.D. Tex. Jan. 3, 2012). *See generally Basic Capital Mgmt. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011) ("Consequential damages are those damages that result naturally, but not necessarily, from the defendant's wrongful acts. They are not recoverable unless

35

the parties contemplated at the time they made the contract that such damages would be a probable result of the breach.").

Again, the cases relied on by Lender are distinguishable. *See Dixon v. Bank of N.Y. Mellon*, No. 3:13-CV-4235-L, 2014 WL 2991742, at *6 (N.D. July 3, 2014) (holding that economic-loss rule barred claim that lender intentionally misrepresented that it provided borrower with notices of default and sale and performed other prerequisites to foreclosure); *Omrazeti v. Aurora Bank FSB*, No. SA:12-CV-00730-DAE, 2013 WL 3242520, at *11 (W.D. Tex. June 25, 2013) (rejecting claim that lender owed borrower duty of ordinary care when instituting foreclosure process and when filing documents in public records affecting borrower's title); *Casey v. Fed. Home Loan Mortg. Ass'n*, No. H-11-3830, 2012 WL 1425138, at *1, *4 (S.D. Tex. Apr. 23, 2012) (holding that economic-loss rule barred claim that lender misrepresented that a foreclosure sale would not occur if borrowers made reduced payments and were still in the modification review stage); *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1006 & n.5 (S.D. Tex. 2011) (holding that plaintiffs failed to distinguish between their breach of contract and general negligence claims, which were based on the assertion that lender "had a duty to Plaintiffs of modification services, protecting Plaintiffs home managing Plaintiffs escrow account and loan account"); *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 808, 817 (Tex. App.—Fort Worth 2006, pet. denied) (holding that independent-injury rule barred claim that party that sold stock of company to Heil falsely represented that company owned a crane when contract of sale for

36

stock included a representation and warranty that company owned the crane); *see also Owen v. Option One Mortg. Corp.*, No. 01-10-00412-CV, 2011 WL 3211081, at *2, *7 (Tex. App.—Houston [1st Dist.] July 28, 2011, pet. denied) (mem. op.) (holding that borrower did not properly plead an independent tort by alleging that lender falsely misrepresented the amount due on the loan and that it had made a property tax payment).

Accordingly, we conclude and hold that the trial court erred by granting summary judgment on Shellnut's fraud and negligent misrepresentation claims only to the extent Shellnut alleged non-benefit-of-the-bargain damages.

## TDCA Violation

In his original petition, Shellnut accused Lender of violating two specific parts of the Finance Code: subsections (a)(8) and (14) of section 392.304. Tex. Fin. Code Ann. § 392.304(a)(8), (14). Those sections provide that

> in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:
>
> . . . .
>
> (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;
>
> . . . .
>
> (14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business.

*Id.* Additionally, although Shellnut did not list a specific provision in reference to his claim that Lender harassed him for payment, finance code section 392.302 provides that

> In debt collection, a debt collector may not oppress, *harass*, or abuse a person by:
>
> > (1) using profane or obscene language or language intended to abuse unreasonably the hearer or reader;
> >
> > (2) placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass, or threaten a person at the called number;
> >
> > (3) causing a person to incur a long distance telephone toll, telegram fee, or other charge by a medium of communication without first disclosing the name of the person making the communication; or
> >
> > (4) causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number.

*Id.* § 392.302 (West 2016) (emphasis added). Shellnut also alleged that Lender engaged in prohibited abusive, harassing, coercive, and threatening behavior under the TDCA by threatening to foreclose its deed of trust lien.

Shellnut complains that Lender violated statutory duties imposed on debt collectors by the TDCA. The Texas Supreme Court has clarified that the economic-loss rule does not necessarily apply to bar certain statutory causes of action that allow recovery of economic losses even when a contract exists between the parties. *See Sharyland Water Supply*, 354 S.W.3d at 418; *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534, 540 (Tex. App.—Eastland 2012, no

38

pet.); *see also McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015) ("A statutory offender will not be shielded from liability simply by showing its violation also violated a contract.").  It is only when a statutory claim is premised upon nothing more than a claim of nonperformance of a promised contractual obligation that it is barred.  *See, e.g.*, *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14–15 (Tex. 1996) (holding that misrepresentations alleged under DTPA were nothing more than promises to perform under the contract).

Shellnut specifically alleged that in the course of attempting to collect past due amounts on the loan, Lender (1) affirmatively misrepresented the amount he actually owed and attempted to make him pay fees he did not actually owe, (2) told him he was eligible for a loan modification program it knew he was not eligible for, and (3) harassed him and his wife.  None of these claims seek to enforce Lender's contractual obligations under the loan documents or involve a claim that Lender misrepresented that it would comply with its obligations under the loan documents.  Instead, Shellnut contends that Lender told him it would not exercise its rights under the loan documents during the modification process.  And as Lender points out in its own arguments, the loan documents did not impose a duty on it to modify the loan.

Shellnut contends that he is entitled to the following "actual damages" for the TDCA-violation claim:  "value for loss of time rectifying the problem, . . . damages for loss of credit and damages to credit reputation, attorneys' fees, . . . mental and emotional distress, damages resulting from payment of excess or

additional interest, and any consequential damages." These are not the type of damages seeking the benefit of the bargain of the loan. *See Gordon*, 2015 WL 5872659, at *4, *7.

Thus, we conclude and hold that Shellnut's TDCA-violation claims—except his claim that Lender wrongfully threatened foreclosure in violation of the TDCA—are not barred by the economic-loss rule. *See SCS Builders*, 390 S.W.3d at 541–42 (holding that DTPA duty not to engage in unconscionable business practices arose independently from contract and, thus, DTPA claim was not barred by economic-loss rule); *see also McCaig*, 788 F.3d at 475 (holding that TDCA-violation claim was not barred by economic-loss rule and noting that "[p]ermitting debt collectors to cast the absence of a contractual right as a mere contractual breach triggering the economic[-]loss rule would fundamentally disrupt the statutory scheme"); *Strong v. Green Tree Servicing, LLC*, No. 3:14-CV-1027-B, 2016 WL 4095597, at *7 (N.D. Tex. Aug. 1, 2016) ("Green Tree had a statutory duty not to misrepresent its services . . . or to otherwise engage in deceptive collection practices."); Tex. Fin. Code Ann. § 392.403 (West 2016) (providing that attorney general may bring action in the State's name to restrain or enjoin a violation of the TDCA), § 392.404(a) (West 2016) (providing that violation of TDCA is also a violation of the DTPA); Tex. Bus. & Com. Code Ann. § 17.44 (West 2011) (providing that purpose of DTPA is "to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty"). *But cf. Nelson v. Ocwen Loan Servicing,*

40

*LLC*, No. H-16-778, 2016 WL 7324284, at *8 (S.D. Tex. Nov. 7, 2016) (holding that claim that lender misrepresented debt by attempting to wrongfully foreclose was barred by economic loss doctrine because wrongfulness of alleged actions arose solely from violation of the loan agreement), *adopting memorandum & recommendation*, 2016 WL 7242735 (S.D. Tex. Dec. 15, 2016).

Again, the cases Lender relies on involve different allegations than those pled here; thus, the holdings in those cases are inapposite. Moreover, we disagree that an allegation that a lender violated the TDCA by misrepresenting the loan amount owed in a collection attempt alleges an action wrongful only under the loan documents. *See Rucker v. Bank of Am., N.A.*, No. 3:13-CV-1895-N, 2014 WL 11310156, at *7 (N.D. Tex. Dec. 18, 2014) (appearing to grant summary judgment on TDCA-violation claim under section 392.304(a)(8) in part because allegation of misrepresentation of character and extent of loan covered by note and deed of trust), *aff'd on other grounds*, 806 F.3d 828 (5th Cir. 2015) (noting that in *McCaig* Fifth Circuit had decided that the economic-loss rule does not bar TDCA-violation claims but affirming summary judgment on section 392.304(a)(8) claim because different amounts in four notice letters were result of two different types of obligations and were consistent); *Hammond v. Ocwen Loan Servicing, LLC*, No. 3:14-cv-2599-BN, 2014 WL 5326722, at *4–5 (N.D. Tex. Oct. 20, 2014); *Johnson v. Wells Fargo Bank, N.A.*, No. 3:13-cv-1793-M-BN, 2014 WL 2593616, at *4 (N.D. Tex. June 9, 2014); *Hernandez v. U.S. Bank, N.A.*, No. 3:13-cv-2164-O, 2013 WL 6840022, at *10 (N.D. Tex. Dec. 27, 2013).

A collection notice or balance statement affirmatively misstating the amount owed on a debt constitutes a misleading assertion regarding the amount of that debt under the TDCA. *See VanHauen v. Am. Home Mortg. Servicing, Inc.*, No. 4:11-CV-461, 2012 WL 874330, at *5 (E.D. Tex. Feb. 17, 2012), *adopting report & recommendation,* 2012 WL 874328 (E.D. Tex. Mar. 14, 2012); *Baker v. Countrywide Home Loans, Inc.,* No. 3:08-CV-0916-B, 2009 WL 1810336, at *7 (N.D. Tex. June 24, 2009); *see also* Tex. Fin. Code Ann. § 392.304(a)(8). This is a different allegation from a complaint that a bank's failure to apply or properly apply a payment is a violation of the TDCA; nothing in the TDCA specifically makes misapplication of a payment or failure to apply a payment a prohibited misleading practice. *See, e.g.*, *Dominguez v. Beneficial Fin. I, Inc.*, No. B:14-67, 2015 WL 12748637, at *9 (S.D. Tex. Feb. 4, 2015), *adopting report & recommendation*, 2015 WL 12748638 (S.D. Tex. June 17, 2015); *Llanes v. U.S. Bank Nat'l Ass'n*, No. 3:13-CV-2243-M-BN, 2014 WL 2883922, at *9 (N.D. Tex. June 25, 2014); *Caldwell v. Flagstar Bank, FSB*, No. 3:12-cv-1855-K-BD, 2013 WL 705110, at *12 (N.D. Tex. Feb. 4, 2013), *accepting findings, conclusions, & recommendation*, 2013 WL 705876 (N.D. Tex. Feb. 26, 2013); *cf. Singh v. JP Morgan Chase Bank, NA*, No. 4:11-CV-607, 2012 WL 3904827, at *8–9 (E.D. Tex. July 31, 2012) (recommending that summary judgment be granted on TDCA-violation claim alleging that lender wrongfully charged late fees under the loan after verbally representing that it would not do so), *adopting report & recommendation*, 2012 WL 3891060 (E.D. Tex. Sept. 7, 2012); *McCartney v.*

42

*CitiFinancial Auto Credit, Inc.*, No. 4:10-CV-424, 2010 WL 5834802, at *4–5 (E.D. Tex. Dec. 14, 2010) (recommending dismissal of claim under TDCA section 392.304(a)(8) for attempting to collect debt in violation of agreement to settle debt), *adopting report & recommendation*, 2011 WL 675386 (E.D. Tex. Feb. 16, 2011).

However, threatening foreclosure when a borrower has defaulted under the loan documents—which is clearly the case here—is not prohibited by the TDCA; thus, this claim is nothing but a recast breach of contract claim. *See* Tex. Fin. Code Ann. § 392.301(b)(2) (West 2016). Accordingly, the trial court did not err by granting summary judgment on this claimed TDCA-violation. *See Rabe v. Wells Fargo Bank, N.A.*, No. 4:11-cv-787, 2013 WL 5458068, at *11 (E.D. Tex. Sept. 30, 2013), *aff'd*, 616 F. App'x 729 (5th Cir. 2015).

**Conclusion—Economic-Loss Rule**

Accordingly, we conclude and hold that the summary judgment was proper on Shellnut's fraud and negligent misrepresentation claims only to the extent that Shellnut sought damages for loss of the equity in his home and damages attributable to Lender's attempts to foreclose. But because he also sought damages for injuries independent of the subject matter of the loan, we conclude and hold that summary judgment was not proper on Shellnut's fraud and negligent misrepresentation claims to the extent he seeks independent damages related to his reliance on Lender's alleged misrepresentations. Likewise, we also conclude and hold that summary judgment was not proper on most of his TDCA-

43

violation claims because of the economic-loss rule except with respect to the allegation that Lender wrongfully threatened to foreclose under the deed of trust. We overrule Shellnut's subissue 3A in part and sustain it in part.

Because Lender did not raise any other grounds for summary judgment on Shellnut's fraud claim, we reverse the summary judgment for fraud to the extent that Shellnut seeks damages for lost earnings and time, out-of-pocket expenses, mental anguish, costs of treatment, and loss of credit score and credit reputation that would not be recoverable as consequential damages in a claim against Lender for breach of the loan documents. We finally consider the claim-specific grounds Lender raised as to Shellnut's TDCA-violation and negligent misrepresentation claims.

## Summary Judgment on Surviving TDCA-Violation Claims and Negligent Misrepresentation Claim Not Proper on Claim-Specific Grounds

In the remaining part of his third subissue—subissue 3B—Shellnut contends that summary judgment was not proper on the claim-specific grounds raised by Lender.

### TDCA Violation

Lender contended in its motion for summary judgment that Shellnut's TDCA-related claims "fail[] because [(1) Shellnut] admits he owed a debt that was in default and he tendered no payments and [2] because loan modification discussions cannot support a TDCA claim." Lender again characterizes Shellnut's TDCA-violation claims as being based on its alleged offer to consider

44

Shellnut for a loan modification and its alleged refusal to accept payments on the loan. Lender cites numerous federal cases, including *Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 348 (5th Cir. 2014), *Massey v. EMC Mortgage Corp.*, 546 F. App'x 477, 480 (5th Cir. 2013), *Verdin v. Federal National Mortgage Ass'n*, 540 F. App'x 253, 257 (5th Cir. 2013), *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013), and *Thomas v. EMC Mortgage Corp.*, 499 F. App'x 343, 337 (5th Cir. 2012). Lender attempts to extricate a general holding for all TDCA-violation claims from these cases, but all of these cases addressed whether specific claims were sufficient to state causes of action under specific sections of the TDCA. Thus, the holdings in these cases cannot be read in the broad sense Lender urges.

In *Miller*, the Fifth Circuit held that a borrower could not maintain a cause of action under section 392.304(a)(8) of the TDCA based on a loan servicer's statements that it would send the Millers a loan application and delay foreclosure pending loan modification discussions when the Millers were always aware of the existence of a mortgage debt, knew the specific amount owed on that debt, and knew that they were in default. 726 F.3d at 723 ("[T]he Millers always were aware (i) that they had a mortgage debt; (ii) of the specific amount that they owed; (iii) and that they had defaulted. Nothing in the Millers' allegations suggests the BAC led them to think differently with respect to the character, extent, amount, or status of their debt."). This is because section 392.304(a)(8) prohibits misleading statements about the amount, character, or nature of the

45

original debt rather than a potential modification of that debt. *See Bracken v. Wells Fargo Bank, N.A.*, 13 F. Supp. 3d 673, 684 (E.D. Tex. 2014) (holding that the Brackens could not state claim under section 392.304(a)(8) with allegation that Wells Fargo told them it would pursue a loan modification simultaneously with a foreclosure and offered a modification which the Brackens then rejected for inaccuracy), *aff'd*, 612 F. App'x 248 (5th Cir. 2015); *see also Chavez*, 578 F. App'x at 348 (citing *Miller* in affirming dismissal of claim under section 392.304(a)(8)); *Massey*, 546 F. App'x at 480 (citing *Thomas* in affirming dismissal of section 392.304(a)(8) claims); *Verdin*, 540 F. App'x at 257 (affirming summary judgment on section 392.304(a)(8) claim that lender foreclosed after telling borrower "not to worry" about foreclosure and to seek a postponement of the sale); *Thomas*, 499 F. App'x at 343 (holding that lender was entitled to summary judgment on claim that it violated section 392.304(a)(8) because loan modification discussions did not represent or misrepresent the amount or character of the debt). But Shellnut alleges that—aside from the modification misrepresentations—Lender affirmatively misrepresented the amount he actually owed on the underlying loan and attempted to collect fees he did not actually owe.[24] Because Lender did not move for summary judgment on Shellnut's claim

---

[24]The May and August 2010 past due letters, and Lender's internal records, show that Lender was calculating Shellnut's past due payments at $1,372.88 per month instead of $1,372.86 per month as set forth in the loan documents. Although this is a de minimis amount, even when spread over the life of the loan, it is nevertheless an inaccurate statement of the monthly amount due.

46

that Lender misrepresented what amount he actually owed on the underlying note, summary judgment was not proper.

With regard to subsection (a)(14), Shellnut alleged that Wells Fargo affirmatively misrepresented that he was eligible for the loan modification program when he was not. This allegation is similar to the plaintiffs' subsection (a)(14) allegation in *Miller* that their lender told them it would consider a loan modification before the scheduled June 1 foreclosure but did not do so. 726 F.3d at 724. The Fifth Circuit held that although the Millers had failed to state a claim under section 392.304(a)(8), this allegation did state a claim under section 392.304(a)(14). *Id.* at 724. None of the other cases cited by Lender address a misrepresentation under subsection (a)(14). Thus, we conclude and hold that Lender was not entitled to summary judgment on Shellnut's claim that it made affirmative misrepresentations under section 392.304(a)(14). *See id.*

Likewise, Lender failed to move for summary judgment on Shellnut's claim of TDCA-prohibited harassment. Thus, it was not entitled to summary judgment on that part of his TDCA-violation claim. *See* Tex. R. Civ. P. 166a(c); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011); *see also State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (stating that a "[s]ummary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion").

Because the grounds stated in Lender's motion for summary judgment specifically as to Shellnut's remaining TDCA-related claims do not show that

47

those claims fail as a matter of law, we conclude and hold that the trial court erred by granting summary judgment on the TDCA-violation claims.

**Negligent Misrepresentation**

Lender raised three other grounds as to Shellnut's negligent misrepresentation claim: (1) that Shellnut does not contend, as required to recover for negligent misrepresentation, that Lender's alleged misrepresentations were made in the context, and for the purpose of, guiding Shellnut in his "business," (2) that the tort of negligent misrepresentation is "not usually available where a contract was actually in force between the parties," and (3) that Lender has no independent duty to Shellnut upon which such a claim can be based.

As to (1) above, Lender cited *Steele v. Green Tree Servicing*, in which the court informed the plaintiffs that it would sua sponte grant summary judgment on their negligent misrepresentation claim because they had not brought forward any evidence that two letters the loan servicer had sent them—a "Notice of Receipt of Partial Payment" and a "Demand for Payment and Notice of Intent to Accelerate"—contained "information . . . supplied for guidance of others in their business." No. 3:09-CV-0603-D, 2010 WL 3565415, at *5, *7–8 (N.D. Tex. Sept. 7, 2010), *aff'd*, 453 F. App'x 473 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 111 (2012). But, here, Lender did not move for summary judgment on any no-evidence grounds. Instead, it argued that the false information Shellnut alleged he had been provided was not for his guidance in "business." Lender cited no

authority to the trial court, and has not cited any in this court, holding that the tort of negligent misrepresentation is categorically unavailable to a plaintiff in circumstances such as those pled here. *See, e.g.*, *Williams v. Wells Fargo Bank, N.A.*, No. 3:11-cv-1253-O, 2012 WL 12871948, at *9 (N.D. Tex. Feb. 7, 2012) (holding, in context of evaluating 12(b)(6) dismissal motion in suit by borrower against bank alleging post-default negligent misrepresentations involving loan modification, that "the Court cannot agree with Defendant's contention that Plaintiffs' complaint does not sufficiently allege that Defendant's purported misrepresentations were made for the guidance of Plaintiffs in their business affairs"), *aff'd*, 560 F. App'x 233 (5th Cir. 2014); *Barraza*, 2012 WL 12886438, at *5–6 (holding that party not named on note but named in deed of trust had standing to bring negligent misrepresentation claim against lender based on allegedly false representation that loan modification was being reviewed, which misrepresentation allegedly caused that party to delay making loan payments); *Brandon v. Wells Fargo Bank, N.A.*, No. 4:11-CV-261, 2011 WL 6338832, at *14 (E.D. Tex. Nov. 30, 2011) (holding that plaintiff was plausibly entitled to relief on his negligent misrepresentation claim that bank misrepresented the status of his loan modification and his eligibility for such a modification for the purpose of preventing him from seeking assistance elsewhere and so that it could accrue additional fees and penalties), *adopting report & recommendation*, 2011 WL 6338827 (E.D. Tex. Dec. 19, 2011). Thus, we conclude and hold that Lender did not prove its entitlement to summary judgment on this ground.

49

With respect to (2) above, Lender cited *Airborne Freight Corp. v. C.R. Lee Enterprises*, in which the court held that a negligent misrepresentation cause of action is generally brought in lieu of a breach of contract action, such as when a party represents that it has entered into a contract with another party when it has not. 847 S.W.2d 289, 295 (Tex. App.—El Paso 1992, writ denied) (citing *Fed. Land Bank Assoc. of Tyler v. Sloane*, 825 S.W.2d 439, 442–43 (Tex. 1991)); *see also Scherer v. Angell*, 253 S.W.3d 777, 780 (Tex. App.—Amarillo 2007, no pet.) (holding that evidence was insufficient to prove negligent misrepresentation because alleged misrepresentations were either (1) promises of future performance rather than misstatements of existing fact or (2) restatements of promises made in existing construction contract). But unlike in the cases cited by Lender, none of the alleged misrepresentations here are based on promises in the loan agreements; as we have pointed out, Shellnut alleged that Lender gave him false information about his participation in the loan modification process, which is not an obligation under the loan documents. Thus, with respect to the out-of-pocket injuries alleged by Shellnut, the negligent misrepresentation claim is not precluded by the existing loan documents.

Finally, with respect to (3) above, Lender contends that it owes no independent duty to Shellnut that would impose liability for negligent misrepresentation. According to Lender, because the relationship between mortgagor and mortgagee is not a special relationship that would impose a duty on either party to engage in a duty of good faith and fair dealing under the loan

documents, it had no independent duty in relation to the modification process. *See FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990). However, this argument is likewise based on Lender's contention that all of Shellnut's claims are related to or subsumed by obligations under the loan documents. Accordingly, we conclude Lender was not entitled to summary judgment on this ground.

Having determined that Lender was not entitled to summary judgment on claim-specific grounds on Shellnut's violation of the TDCA and negligent misrepresentation claims, we sustain subissue 3B.

## Although Subissue 4 Inadequately Briefed, Trial Court Not Precluded From Revisiting Ruling on Remand in Light of This Court's Holdings

In his fourth subissue, Shellnut contends the trial court erred by partially denying his amended second motion seeking to compel Lender to answer thirteen interrogatories and by granting Lender a protective order as to several deposition topics. Instead of addressing each alleged error with pertinent argument and authority, Shellnut incorporated into his brief by reference all of his arguments in the trial court, conceding that the discovery issues were "voluminous." But this type of argument is not adequate to require this court to address the issue on appeal. *See, e.g.*, Tex. R. App. P. 38.1(f), (h), (i); *Galilee Partners, L.P. v. Tex. Comm'n on Envtl. Quality*, No. 11-12-00033-CV, 2014 WL 358287, at *5 (Tex. App.—Eastland Jan. 31, 2014, no pet.) (mem. op.). In any event, because we are remanding for further proceedings on Shellnut's fraud,

51

negligent misrepresentation, and TDCA-violation claims, nothing precludes the trial court from reconsidering the discovery-related concerns raised in Shellnut's amended second motion to compel and Lender's motion for a protective order, nor precludes the parties from conducting further discovery or other proceedings on Shellnut's surviving claims.[25] *See Kaldis v. Aurora Loan Servs.*, 424 S.W.3d 729, 737 & n.10 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We overrule Shellnut's fourth subissue.

---

[25]A cursory review of Lender's response to the motion to compel and objections to discovery shows that Lender relied extensively on its summary judgment allegations and characterization of Shellnut's claims in litigating the discovery dispute.

## Conclusion

Having sustained part of Shellnut's first subissue (subissue 1A), his second subissue, and parts of his third subissue (all of 3B and part of 3A), we reverse the summary judgment on his TDCA-violation claims except the allegation that Lender wrongfully threatened to foreclose, and we reverse the summary judgment on his fraud and negligent misrepresentation claims to the extent Shellnut seeks non-benefit-of-the-bargain damages. We remand those claims to the trial court for further proceedings. We affirm the remainder of the summary judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

DELIVERED: April 27, 2017